[Crim. No. 4075. Fifth Dist. Sept. 29, 1980.]

THE PEOPLE, Plaintiff and Respondent, v.
RICHARD WAYNE BOYCE, Defendant and Appellant.

728

■■■■■■■■■■■■

COUNSEL

Quin Denvir, State Public Defender, under appointment by the Court of Appeal, Ezra Hendon, Chief Assistant State Public Defender, Mark L. Christiansen and Ted W. Isles, Deputy State Public Defenders, for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Arnold O. Overoye, Assistant Attorney General, Charles P. Just, Charles J. Hames and Garrick W. Chock, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

CONN, J.*—

### STATEMENT OF THE CASE

Appellant was tried before a jury on an information charging him with a violation of Penal Code section 496, receiving stolen property, and an additional count alleging a violation of Penal Code section 459, burglary. He was found guilty of receiving stolen property. Probation was denied and he was sentenced to state prison. Appellant now appeals from the judgment of conviction.

A review of the evidence presented at trial is essential in resolving the issues presented on appeal.

A daytime burglary occurred on March 28, 1978, at the Madera home of Mr. and Mrs. Buchanan. The items stolen included a saddle worth about $500, other horse gear, and a television set.

Appellant had known the Buchanans for several years before the burglary. His girl friend was Mr. Buchanan's ex-wife. While visiting the Buchanans in their home about a month before the burglary, appellant saw and commented on the saddle. On that occasion he was also told by Mrs. Buchanan that she and her husband worked daytime hours and usually did not get home until evening.

*Assigned by the Chairperson of the Judicial Council.

■■■■■■■

Shortly after the burglary the Buchanans told a longtime friend, Raymond Verduzco, about their losses and described the saddle and the other stolen property. Verduzco explained at trial how he "ran across" the Buchanans' saddle by "accident" about a month after the burglary. On April 25th, a friend of Verduzco's named "Butch" Miller offered to take Verduzco to the residence of "Slug" Carmack to see about a saddle. On the way to Carmack's residence, Miller told Verduzco the saddle was "hot." Verduzco testified that he was not seriously looking for a saddle to buy, but he was curious because he remembered that the Buchanans had lost a saddle in the burglary.

When they arrived at Carmack's residence, Verduzco asked Carmack about the saddle. He was told that it was "hot" and that it had been stolen near the "Y" on the east side of town on a date near to the time of the Buchanan burglary. Carmack told Verduzco "the guy" who gave it to Carmack wanted $100 for it. When Verduzco offered $50 for the saddle, Carmack promised to convey the offer to "the guy."

As soon as Verduzco returned home he called a friend of the Buchanans and asked for a description of the missing saddle; the description of the Buchanans' saddle matched the one Verduzco had seen at Carmack's. A few days later Verduzco told the Buchanans he thought he might have found their saddle. Deciding to try to buy back the saddle, the Buchanans gave Verduzco $50 to pay for it.

Verduzco again contacted Miller and asked him if he knew who had stolen the saddle. Miller replied he "was pretty sure it was Richard." Verduzco did not disclose that he was acting for the Buchanans in buying back the saddle.

Verduzco returned to Carmack's home by himself around April 28th, three days after their first contact. During their second meeting, Carmack told Verduzco that "the guy" had accepted Verduzco's offer of $50. Verduzco paid Carmack the $50, received the saddle from him, and returned the saddle to Mr. and Mrs. Buchanan.

Earlier, the Buchanans had contacted the sheriff's department and received permission from Detective Fred Flores to proceed with the plan for recovering the saddle. After the sale was consummated, Flores obtained a search warrant for Carmack's residence. When the warrant was executed, the Buchanans' television, saddle blanket and saddle

cinch were found at Carmack's residence, and Carmack was placed under arrest for receiving stolen property. The arresting officers promised him that he would not be prosecuted if he talked with them and testified in the case. Carmack then gave a statement to Officers Flores implicating appellant in the sale of the stolen property.

Carmack testified for the prosecution at appellant's trial. He stated that appellant brought the saddle, saddle blanket, saddle cinch, and television set to Carmack's house in early April 1978; that appellant said he wanted to keep the blanket and cinch but that Carmack could have the television set; that appellant asked Carmack to sell the saddle for him for $100; and that Carmack told appellant he would try to sell it for him. He said that appellant later authorized the sale of the saddle for $50 and that he gave the proceeds to appellant after the sale.

Carmack further testified that "He [appellant] told me they was hot when he brought them over. I just figured he ripped them." Carmack said that he could not recall whether appellant actually told him that he (appellant) had stolen the items. However, Carmack did remember appellant had told him that the items came from "a house out near the Y Bar" and from the ex-husband of appellant's girlfriend.

Regarding Miller's role in the transaction, Carmack testified that he had told Miller not only that he wanted to sell a saddle but also that the saddle was stolen. Miller, in his testimony, admitted taking Verduzco to Carmack's house to look at the saddle. However, Miller testified that he did not learn the saddle was stolen until the initial meeting between Carmack and Verduzco when Carmack announced the saddle was "hot." Miller further testified that the day after that meeting he returned alone to Carmack's house and was told then by Carmack that "Richard said that he would take $50 for the saddle." Miller testified that he then gave this information to Verduzco and thereafter had no further dealings with the saddle.

Appellant was the only witness called by the defense. He admitted that he was a good friend of Carmack's and that he had been at Carmack's home around the time of the sale of the saddle. However, appellant denied giving the property to Carmack and denied discussions of any sale. He also denied burglarizing the Buchanans' residence and taking any property from them.

At the close of the prosecution's case, appellant moved for a judgment of acquittal on both counts pursuant to section 1118.1 of the Penal Code, arguing that the only evidence of guilt was the testimony of uncorroborated accomplices. The motion was denied.

The jury was properly instructed that the two counts of the information were alternate offenses and that a verdict of guilty in one would preclude a verdict of guilty in the other. The verdict of guilty in count one (receiving stolen property) effectively disposed of all further contention as to count two (burglary) and renders any further discussion of the latter charge unnecessary.

At the conclusion of the evidence, appellant requested instructions in regard to the treatment of accomplice testimony and the necessity of corroboration. The instructions were refused.

Appellant asserts that these rulings were error.

## Discussion

A disposition of the issues presented in this case requires an analysis of section 496, subdivision 1, of the Penal Code which provides the statutory definition of criminal activity commonly known as "receiving stolen property." Not until an English statutory enactment in the early 19th century did the act of receiving stolen property with knowledge that it was stolen attain the status of a separate substantive crime. (7 & 8 Geo. IV, ch. 29, § 54 (1827).) American jurisdictions followed the English lead and there has been a tendency to broaden the scope of the crime by including conduct such as concealing and withholding stolen property as well as receiving it. (See LaFave & Scott, Criminal Law (1972) § 93, p. 682.) As amended in 1972 and 1976, the California statute is an example of the broad scope of proscribed conduct, providing in section 496, subdivision 1 in relevant part: "Every person who buys or receives any property which has been stolen or which has been obtained in any manner constituting theft or extortion, knowing the property to be so stolen or obtained, or who conceals, sells, withholds or aids in concealing, selling, or withholding any such property from the owner, knowing the property to be so stolen or obtained, is punishable by imprisonment in a state prison, or in a county jail for not more than one year;..."

In resolving the questions before us, we are required to decide whether each of the criminal acts described in the statute must be deemed separate and distinct offenses for purposes of ruling on a motion for acquittal. (Pen. Code, § 1118.1) and for determining a witness' status as an accomplice (Pen. Code, § 1111).

Several cases are of interest to us in our analysis. *Williams* v. *Superior Court* (1978) 81 Cal.App.3d 330 [146 Cal.Rptr. 311], considered the case of a defendant charged with one count of receiving and concealing stolen property, and another count of conspiracy to commit receiving and concealing stolen property. The court held that under the facts of that case the statute of limitations barred the "receiving" offense but did not bar the "concealing" charge, the latter being a continuing offense. In so holding the court noted that "[c]oncealing stolen property is a distinct and separate offense from receiving stolen property precisely because receiving congeals and is completed upon taking possession with guilty knowledge, whereas concealing, by definition, continues. [Citation.]" (*Id.*, at p. 343.)

In *People* v. *Feldman* (1959) 171 Cal.App.2d 15 [339 P.2d 888], the defendant was indicted on a charge of "receiving" stolen property. The evidence showed only that defendant concealed or aided in concealing the stolen property. The court held that the conviction must be reversed because defendant was not properly apprised in advance of the specific charge, stating: "Concealing or aiding in concealing the stolen property is manifestly not the same offense as receiving or aiding in receiving stolen property." (*Id.*, at p. 24.)

In another case the court was confronted with a witness who had received the stolen property and testified to his sale of the property to the defendant who was himself on trial for receiving stolen property. (*People* v. *Burness* (1942) 53 Cal.App.2d 214 [127 P.2d 623].) The court held that the witness was not defendant's accomplice under the evidence presented, noting that by purchasing and receiving the property from the witness, "the defendant became guilty of an offense separate and distinct" from that committed by the witness in receiving it from the original thief. (*Id.*, at p. 218.)

■ It is settled law in California that, absent a preexisting conspiracy, a thief and a receiver of stolen property are not accomplices. (*People* v. *Lima* (1944) 25 Cal.2d 573 [154 P.2d 698].)

The court in *Lima* explained the reason behind the rule: "This is so, because the receiver usually has no part in the theft, directly or indirectly, and the criminal act of knowingly receiving the stolen property occurs independently thereof and at a time subsequent to the completion of the asportation. And conversely, it has been said that inasmuch as a thief cannot receive from himself, he cannot be an accomplice of the receiver. The thief and the receiver are therefore generally said to be guilty of separate and distinct substantive offenses, and not being 'liable to prosecution for the identical offense' are not accomplices within the meaning of that term as defined in section 1111 of the Penal Code." (*Id.*, at pp. 576-577.)

■ It thus appears that the acts of receiving, withholding and concealing stolen property as well as theft are consistently treated as separate and distinct criminal offenses whether for the purpose of applying the statute of limitations, the rules of pleading, or the determination of an accomplice.

We note that Penal Code section 496 was amended in 1972 to make subdivision 1 of that section applicable to any person who "sells" or "aids in selling" property, knowing it to be stolen. (Stats. 1972, ch. 963, § 1, p. 1739.) No cases have come to our attention following the enactment of that amendment that deal with a "seller" as being culpable of a separate and distinct offense from the other acts proscribed by the statute. In our view, the concept that each of the prohibited acts listed in section 496, subdivision 1, are separate and distinct offenses should apply logically and consistently to the act of "selling" stolen property. The act of receiving stolen property is completed when the culprit takes possession; similarly, the act of selling stolen property is accomplished when he later transfers possession to another person for gain.

In examining the record before us, we note that count one of the information charged appellant with a felony violation of section 496 of the Penal Code, alleging in part that he did "willfully and unlawfully buy, receive, conceal, sell, withhold and aid in concealing, selling, and withholding" a stolen saddle with knowledge that it had been stolen. Each of the alleged acts constituted a separate and distinct offense.

THE MOTION FOR ACQUITTAL

We now turn to appellant's contention that the trial court erred in denying appellant's motion to acquit pursuant to section 1118.1 of the

Penal Code. Appellant argues that the motion should have been granted because the only evidence against appellant was the testimony and extrajudicial statements of Carmack who, as a matter of law, was appellant's accomplice, and there was no corroborating evidence. On the other hand, respondent contends that the trial court correctly ruled that Carmack was not an accomplice whose testimony needed corroboration. We agree with appellant.

The treatment of accomplice testimony is set out in section 1111 of the Penal Code: "A conviction cannot be had upon the testimony of an accomplice unless it be corroborated by such other evidence as shall tend to connect the defendant with the commission of the offense; and the corroboration is not sufficient if it merely shows the commission of the offense or the circumstances thereof." The same section defines an accomplice: "An accomplice is hereby defined as one who is liable to prosecution for the identical offense charged against the defendant on trial in the cause in which the testimony of the accomplice is given."

■ Where the evidence is clear and uncontroverted, the court may determine as a matter of law whether a witness is an accomplice, but where there are disputed facts or conflicting inferences, this question must be left to the jury to decide. (See *People* v. *Hoover* (1974) 12 Cal.3d 875, 880 [117 Cal.Rptr. 672, 528 P.2d 760].)

■ It is clear from the record before us that both Carmack and Miller were directly and knowledgeably involved in the concealing, selling, and withholding of the stolen saddle. Both of them could have been prosecuted under the same information in the same trial as that endured by appellant. We conclude that as to the offenses of "concealing, selling and withholding" stolen property and aiding the commission of these offenses, Carmack and Miller were appellant's accomplices as a matter of law and their testimony was required to be corroborated.

Whether Carmack was appellant's accomplice in the initial receiving of the stolen goods from the thief is not so clear. Although Carmack testified that he took no part in the theft or original receipt of the goods, and denied any preknowledge of these events, the fact remains that the police found him with the stolen property in his own home a month after the burglary took place. ■ Evidence that a person is in conscious possession of stolen property shortly after it is stolen is a

circumstance tending to show that the person may be guilty of the theft of the property, although falling short of being sufficient by itself to sustain a conviction. (*People* v. *McFarland* (1962) 58 Cal.2d 748 [26 Cal.Rptr. 473, 376 P.2d 449].) A fortiori, such evidence would tend to show that the possessor of stolen property was criminally implicated in its receipt. In a case where the defendant was on trial for burglary, and the prosecution witnesses were found with the stolen goods in their home, the court held that whether the witnesses were accomplices was a question for the jury. (*People* v. *Platnick* (1958) 161 Cal.App.2d 313 [326 P.2d 585].) We therefore conclude that there were conflicting inferences on the question whether Carmack was an accomplice to appellant's initial receipt of the stolen property. This question was accordingly for the jury.

Appellant argues that even if the sale of the stolen property is treated as a distinct offense from that of appellant's earlier receiving of the property, Carmack's testimony relating to the earlier receiving required corroboration because it is tainted by the witness' complicity in the later sale of the property. Appellant asserts that the only evidence of his (appellant's) receipt of the property is by logical inference from his possession of it when he delivered the property to Carmack for the purpose of sale.

This is not exactly the case, however. Aside from merely having the property in his possession, appellant made damaging admissions to Carmack, telling him that the property was "hot," and that it had belonged to the ex-husband of his girl friend.

Essentially, appellant is contending that evidence gained by a witness during complicity with a defendant in one crime will require that he be treated as an accomplice when he testifies to such evidence during the trial of the defendant as to another crime. Appellant has cited us no authority for that proposition. It does not appear to be the law. (See *People* v. *Owens* (1946) 28 Cal.2d 191 [165 P.2d 945].)

We conclude therefore that corroboration was required as a matter of law only as to the offenses of selling, concealing, and withholding stolen property. As to the receiving of stolen property, it could not be determined at the motion for acquittal whether corroboration was required because a jury question remained on the accomplice issue as to the latter crime.

■ In reviewing the evidence in our search for corroboration, we must first note that any evidence provided by Miller would not suffice because one accomplice may not corroborate another. (*People v. Scofield* (1971) 17 Cal.App.3d 1018, 1026 [95 Cal.Rptr. 405].) ■ However, there is independent evidence that a burglary occurred, that appellant knew the victims and the location of their home, that appellant was aware that both of the victims would be at work during the daytime, and that appellant was a friend of Carmack and had been to his home at about the time of the delivery of the stolen goods. At best, this evidence shows only that appellant had the opportunity to commit the offenses. Corroboration must be more than just a casting of suspicion on a defendant. (*People v. Collins* (1960) 186 Cal.App.2d 329, 337 [9 Cal.Rptr. 33].) Evidence of mere opportunity to commit a crime is not sufficient corroboration. (*People v. Thurmond* (1959) 170 Cal. App.2d 121, 124 [338 P.2d 472].) We find that there was insufficient evidence to corroborate the testimony of the accomplices.

In reviewing the order of the trial court denying appellant's motion for acquittal, we note that section 1118.1 of the Penal Code provides as follows: "In a case tried before a jury, the court on motion of the defendant or on its own motion, at the close of the evidence on either side and before the case is submitted to the jury for decision, shall order the entry of a judgment of acquittal of *one or more of the offenses* charged in the accusatory pleading if the evidence then before the court is insufficient to sustain a conviction of such offense or offenses on appeal. If such a motion for judgment of acquittal at the close of the evidence offered by the prosecution is not granted, the defendant may offer evidence without first having reserved that right." (Italics added.)

■ Having concluded that each of the prohibited acts charged against appellant are separate and distinct offenses, and that the uncorroborated testimony of an accomplice was insufficient to sustain a conviction for "concealing, withholding, and selling" stolen property, we therefore find that the trial court erred in denying the motion for acquittal as to those offenses. There is no evidence whatsoever in the record tending to show that appellant "bought" the stolen property, thus the trial court should have granted the motion as to the offense of "buying" stolen property also. The trial court correctly denied the motion as to the offense of "receiving" stolen property. Whether Carmack was an accomplice to that offense was a question for the jury.

## INSTRUCTIONAL ERROR

At the conclusion of the evidence appellant requested that the trial court give instructions defining an accomplice, stating the necessity of corroboration of testimony of an accomplice, explaining the nature of corroboration, declaring that an accomplice's testimony must be viewed with distrust, and instructing that Carmack was an accomplice as a matter of law. (CALJIC Nos. 3.10, 3.11, 3.12, 3.16 (mod.), and 3.18.) The requested instructions were refused and appellant asserts that such refusal was error.

Having decided that a motion for acquittal should have been granted as to the offenses of "concealing, selling, buying, and withholding" stolen property, the question of instructions as to those offenses becomes moot. As to the offense of "receiving" stolen property, having decided that Carmack was not necessarily an accomplice, we must hold that CALJIC No. 3.16 was properly refused.

Because Carmack's status as an accomplice to the offense of receiving stolen property was a matter for the jury to resolve, this issue should have been submitted to the jury under appropriate instructions. (CALJIC Nos. 3.10, 3.11, 3.12, 3.13, 3.18, and 3.19.) To the extent that the appropriate instructions were not requested by appellant, the trial court had a duty to give them *sua sponte.* (*People* v. *Gordon* (1973) 10 Cal.3d 460, 469 [110 Cal.Rptr. 906, 516 P.2d 298].)

■ Because we have previously concluded that there was insufficient evidence to corroborate Carmack's testimony, the determination of his status as an accomplice was crucial to a determination of appellant's guilt. There were conflicting inferences on this issue and we cannot say that the trial court's failure to give the requested and required accomplice instructions was harmless error. A reversal is therefore required.

Upon retrial, appellant may not be tried again for the offenses of "buying, concealing, selling, or withholding" stolen property because the trial court should have granted appellant's motion for acquittal on those charges. (*People* v. *Belton* (1979) 23 Cal.3d 516, 527 [153 Cal. Rptr. 195, 591 P.2d 485].)

Appellant's remaining contentions as to his eligibility for "good time and work time" credits need not be considered in this appeal.

The judgment of conviction is reversed. The trial court is directed to enter a judgment of acquittal of appellant as to the offenses of "buying, concealing, selling, and withholding" stolen property and aiding in "concealing, selling, and withholding" such property.

Zenovich, Acting P. J., and Hanson (P. D.), J., concurred.

A petition for a rehearing was denied October 29, 1980, and the judgment was modified to read as printed above.