[Crim. No. 3960. Fifth Dist. Jan. 15, 1981.]

THE PEOPLE, Plaintiff and Respondent, v.
ALFRED BANUELOS BEJARANO, Defendant and Appellant.

## COUNSEL

Quin Denvir, State Public Defender, under appointment by the Court of Appeal, and Charles M. Bonneau, Deputy State Public Defender, for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Arnold O. Overoye, Assistant Attorney General, Gregory W. Baugher and James Ching, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

BROWN (G. A.), P. J.—Appellant, Alfred Bañuelos Bejarano, was convicted of first degree burglary (Pen. Code, § 459) of the home of Opal Hankins and of the first degree burglary of the home of Douglas Tellier. Both crimes occurred during the evening of May 1, 1978. Appellant was also convicted of three counts of violating that part of Penal Code section 496 which prohibits receiving, concealing or withholding property known to be stolen. One count related to the property of Penny Pike which was sold to Herron Fuentez, one count to the property of Robert Jones which was sold to Delores Garcia, and a third count to the property of Sharon Mensch which was also sold to Delores Garcia.

In this appeal from the judgment appellant raises issues of insufficiency of the evidence, failure to give accomplice instructions on the Penal Code section 496 violations and alleged sentencing errors. We will consider these issues seriatim, setting forth the pertinent facts in connection with the discussion of the stated issues.

## INSUFFICIENCY OF THE EVIDENCE

■ The evidence supporting the Tellier burglary showed that commencing at approximately 7:30 p.m. on May 1, 1978, Officer Foy and a companion officer, working incognito and traveling in an unmarked vehicle, conducted a surveillance operation for a period of several hours upon the activities of appellant, Ralph Garcia, and other unnamed persons. The officers followed the station wagon occupied by appellant and others as it stopped at several motels in Bakersfield. At each stop the officers observed a female passenger exit the vehicle, enter the motel office, and return to the vehicle. This activity continued for approximately 45 minutes, until the station wagon stopped at the Globe Motel in Bakersfield. At that point, the officers testified, all the occupants of the station wagon exited and entered a motel room there. Officer Foy testified that he observed Garcia taking several boxes from the station wagon into the motel room and other sundry movements between the station wagon and the motel room.

At approximately 8:30 p.m., Foy testified that they followed the station wagon, then occupied only by appellant and Garcia, as it traveled to various residences nearby. They followed appellant's station wagon to the unlit residence of Douglas E. Tellier at 823 Wilson Road. The officers, from an unobstructed vantage point, observed Garcia and appellant move to the front porch of the house, then to the rear of the house. Thereafter Foy testified that the interior lights of the house flashed on and off two times. After approximately three minutes in the house appellant and Garcia returned to their car and drove off.

Shortly afterwards that evening the officers returned to the Tellier residence, inspected the house, and had a conversation with its owner, who had just returned home. They observed pry marks on and about the back door frame and that the rear window of the house had been apparently pried open. Tellier testified that earlier that evening when he left the house no interior lights were on; when he returned some interior lights were burning.

On May 1 sunset was at 7:42 p.m., and the officers made their observation of appellant's conduct at the Tellier residence in the dark at approximately 8:30 p.m.

Later that evening when appellant was arrested he and his companion, Garcia, were in possession of screwdrivers which were capable of causing pry marks of the size left on the Tellier back door frame.

The evidence supporting the Hankins' burglary showed that after leaving the Tellier residence the officers followed Garcia and appellant to the unlit Hankins residence located approximately seven-tenths of a mile from the Tellier residence. The officers observed appellant and Garcia walk to the back of the house and return after approximately 30 seconds. The station wagon drove away from the house on South "K" Street with its headlights off. After stopping in front of another unlit residence, Foy testified that the station wagon turned into an alley and disappeared from the view of the officers for a period of 30 minutes.

Hankins testified that her house had been burglarized and items of property stolen sometime in the evening of May 1, 1978. She testified that upon arriving home late in the evening of May 1, she observed pry marks on the rear door frame, a broken screen, and broken windows in the rear door. She further testified that several items of personal property were missing: several valuable dimes from her coin collection, a 16-gauge shotgun, a .22 caliber rifle with a scope, a .38 caliber pistol, and a Montgomery Ward 19-inch television. At trial Hankins positively identified, through the use of matching serial numbers, the television set, .22 caliber rifle, and shotgun confiscated from appellant's car and motel room on the night of his arrest. At the time of arrest a large television was visible in the back of appellant's car. Officer Foy testified that earlier in the evening he had not observed the television in the back seat when he passed appellant's car on the street. Hankins further testified that when she returned to her home late in the evening of May 1 she was unable to turn on the rear porch lights. When she left the house all three porch lights were burning. She discovered the next day that all three bulbs in the rear porch lights had been unscrewed.

In light of the foregoing evidence, appellant's contention that the evidence was insufficient to support the finding that he entered the Tellier and Hankins residences in the nighttime with the intent to commit theft is patently meritless. (See *People* v. *Redmond* (1969) 71 Cal.2d 745, 755-756 [79 Cal.Rptr. 529, 457 P.2d 321]; *In re Frederick G.* (1979) 96 Cal.App.3d 353, 362-365 [157 Cal.Rptr. 769].)

Appellant's claim of insufficiency of the evidence with regard to the three counts of concealing, withholding and receiving stolen property derives from his contention that the sole witnesses to support these convictions were Herron Fuentez as to the Pike stolen property and Delores Garcia as to the Robert Jones and Mensch stolen property and that

those witnesses were accomplices whose testimony was uncorroborated. Accordingly, we will consider his contention under the next heading.

### Sua Sponte Duty to Instruct the Jury Regarding the Corroboration of Accomplice Testimony

The evidence relating to the three concealing, withholding and receiving charges showed, with respect to the Pike stolen property, that between April 21 and 23 the Pike residence was burglarized and a stereo was taken. It was recovered on May 2 from Herron Fuentez. Fuentez testified that appellant approached him on the street and offered to sell him the stereo for a price of $50. Pike had paid $480 for the stereo. Appellant was not an acquaintance of Fuentez before the transaction, nor had Fuentez ever seen appellant before or after the sale of the stereo took place. The transaction was completed on a public sidewalk.

At trial Penny Pike positively identified, through the use of matching serial numbers, the stereo recovered from Fuentez as her own.

With regard to the Jones stolen property, his apartment was burglarized on April 21. A television set, a turntable, and an amplifier were missing from the apartment. The stereo was recovered from Delores Garcia on May 11.

As to the Mensch property, the victim testified that her house was burglarized in the afternoon or evening of May 1. A 19-inch Quasar color television was taken. The set was recovered from Delores Garcia on May 11.

Delores Garcia testified that sometime at the end of April she had purchased a Quasar television set and a stereo from appellant. Miss Garcia testified that while she was not a friend of appellant, she was acquainted with him because he had lived in her neighborhood for some time. Garcia's son and appellant were friends. She further testified that she had given her phone number to an unnamed person who had told her that appellant was moving and thus was selling much of his furniture and personal possessions. Shortly thereafter appellant called Miss Garcia offering to sell her a television set. Miss Garcia agreed to the offer, and paid appellant $80 cash when he delivered it several days later, in the daytime. The television set was a 19-inch Quasar, positively identified at trial as belonging to Sharon Mensch, which had been

purchased four and one-half months earlier for $212. Miss Garcia further testified that several days later appellant telephoned her once again, this time offering to sell her a stereo. She again agreed and offered to pay appellant the agreed-upon $40 purchase price in a bar. The stereo was delivered, and Miss Garcia testified that she met appellant in a bar and paid him the $40. The stereo was identified as being the one taken from Jones' apartment and for which he had paid $190 two and one-half years earlier.

On June 14 Garcia received a threatening phone call from appellant in which appellant threatened to harm Garcia's boyfriend should she testify against appellant at the pending criminal trial.

The testimony of Fuentez and Garcia furnished the only evidentiary nexus between the stolen property and appellant in which the guilty verdicts on the Penal Code section 496 charges were based. If they were accomplices of appellant, the court was required to give the necessary accomplice instructions *sua sponte* (*People* v. *Gordon* (1973) 10 Cal.3d 460, 466-470 [110 Cal.Rptr. 906, 516 P.2d 298]), including instruction that their testimony had to be corroborated (Pen. Code, § 1111).

An accomplice is "one who is liable to prosecution for the identical offense charged against the defendant on trial in the cause in which the testimony of the accomplice is given." (Pen. Code, § 1111.) For the reasons hereinafter stated, however, we have concluded that there was no evidence that would conceivably make Fuentez or Garcia liable for the "identical offense" for which appellant was being prosecuted and therefore as a matter of law they were not accomplices of appellant.

In *People* v. *Boyce* (1980) 110 Cal.App.3d 726 [168 Cal.Rptr. 219] this court held: "It thus appears that the acts of receiving, withholding and concealing stolen property as well as theft are consistently treated as separate and distinct criminal offenses whether for the purpose of applying the statute of limitations, the rules of pleading, or the determination of an accomplice." (*Id.*, at p. 734.)

In the *Boyce* case the information charged that appellant did "'. . . buy, receive, conceal, sell, withhold and aid in concealing, selling, and withholding'" the stolen property. (*Ibid.*) Under the evidence in that case the court concluded that two corroborating witnesses were accomplices as a matter of law in the concealing, selling and withholding

of the stolen property and aiding in the commission of those offenses, and that whether they were accomplices in the initial receiving was a jury question and as a matter of law they were not accomplices as to the offense of buying the stolen property. ■ Thus each of the acts listed in Penal Code section 496 must be considered as distinct and separate offenses for the purpose of determining whether a witness is an accomplice to that particular crime.

■ Turning to the case at bench, the information charged appellant "did ... conceal, withhold or receive ..." stolen property. He was not charged with selling the property. The acts with which appellant is charged obviously occurred at times predating the sales to Fuentez and Garcia, and there is no evidence whatsoever in this case showing any complicity on the part of Fuentez and Garcia in appellant's concealing, withholding and receiving the stolen property.

Fuentez and Garcia could conceivably be charged with separate violations of Penal Code section 496, that is, buying and receiving the stolen property. In that event the evidence of guilty knowledge, such as the disparity in price, the acquaintanceship of Garcia with appellant and the completion of one of the transactions in a bar, would go to Fuentez' and/or Garcia's possible crimes of receiving and buying stolen property rather than the offenses with which appellant was charged; the latter offenses having occurred at a much earlier date than the offenses with which Fuentez and Garcia could possibly be charged. Thus Fuentez and Garcia were not guilty of the identical crimes with which appellant was charged.

Accordingly, we conclude that Garcia and Fuentez as a matter of law were not accomplices and the court did not err in failing to give accomplice instructions.

SENTENCING ERRORS

Appellant was sentenced to state prison for a total term of eight years. He received the upper term of four years for the Hankins burglary, which was enhanced one year for a prior robbery conviction. (Pen. Code, § 667.5.) He received a total of three years consecutive sentences on the four remaining subordinate offenses: one year on the Tellier burglary and eight months each for the three receiving stolen property charges.

At the sentencing hearing the judge commented: "THE COURT: First of all, the request for CRC will be denied and the defendant's past criminality and past commitment to state prison would render him ineligible if the court were to make the referral.

"Probation is denied for the reason of the nature of these charges and these convictions and the defendant's past record of criminality.

"The defendant is sentenced to state prison as follows:

"Count 1, the court finds that there are no circumstances in mitigation and that in aggravation there are the following circumstances; that there are multiple victims involved here and that the defendant has shown an attempt to interfere with the testimony of a witness; that these crimes indicate a planning and premeditation; that the crimes involve the taking of property which involved great monetary value; that the defendant has numerous prior convictions; that he is on parole at the time the offense was committed; he has not performed satisfactorily on parole; therefore, the aggravated term on Count 1 will be imposed and that being four years in the state prison.

"In addition, at the time of the trial the defendant admitted and was found to be true that the defendant had to serve a prior prison term pursuant to Section 667.5(b) of the Penal Code and therefore one year is imposed and consecutive to the four years that were just pronounced.

"In total, the sentence for Count 1 of the information is five years in the state prison.

"Count 2, the defendant is sentenced to state prison for the middle term, that being three years and that to be consecutive and therefore one third of that term will be imposed which is one year.

"On Count 3, the defendant is sentenced to state prison, the Department of Corrections under the middle term is involved, that being two years and that would be consecutive to the prior sentence and therefore eight months will be sentenced on that count.

"Count 4, the defendant is sentenced to the state prison and again the middle term of two years imposed and that sentence to run consecutive with the other counts, therefore, one third of the middle term which is eight months will be imposed.

"On Count 5, the defendant is sentenced to the state prison and again the middle term of two years is imposed and that sentence is to run consecutive to all other counts and therefore eight months will be actually involved.

"The total term to which the defendant is sentenced to the state prison on all of the counts is eight years."

This record reveals several sentencing errors. One glaring error clearly requires reversal.

■ The court failed to state reasons for imposing the consecutive sentences. Penal Code section 1170, subdivision (c), requires the court to state the reasons for its sentence choice (see also Cal. Rules of Court, rule 443); the imposition of a consecutive sentence is a sentencing choice. (*People* v. *Lawson* (1980) 107 Cal.App.3d 748 [165 Cal.Rptr. 764]; *People* v. *Turner* (1978) 87 Cal.App.3d 244 [150 Cal.Rptr. 807]; *People* v. *Walker* (1978) 83 Cal.App.3d 619, 622 [148 Cal.Rptr. 66]; Cal. Rules of Court, rules 405(f), 433(c)(3).) California Rules of Court, rule 425, sets forth the criteria affecting the decision to impose consecutive rather than concurrent sentences. California Rules of Court, rule 421, sets forth the criteria affecting the decision to aggravate a sentence. While there is some overlap between rules 425 and 421, there are several distinct factors to be considered in imposing a consecutive sentence. In violation of the above rules, in the case at bench the trial court did not expressly state its reasons for imposing consecutive sentences.

Respondent cites *People* v. *Blessing* (1979) 94 Cal.App.3d 835 [155 Cal.Rptr. 780] and argues that the reasons stated for aggravating the sentence could be utilized as reasons for imposing the consecutive sentences. *Blessing* stated that where the ability to review the decision of the trial court is not impaired by the failure of the trial court to separately state its reasons for imposing a consecutive sentence the decision will not be disturbed. Whatever the validity of *Blessing* may be, in the factual circumstance at bench the holding obviously conflicts with our decision in *People* v. *Lawson, supra,* 107 Cal.App.3d 748, wherein this court held that a consecutive sentence is an enhancement and the dual use of any fact to both aggravate and enhance (impose a consecutive sentence) is prohibited. The court did not expressly state any reasons for the consecutive sentencing choices. Assuming, however, as respondent argues, that this court can infer that the trial court used the same

reasons to impose the upper term and to impose the consecutive sentences, there is a clear violation of the dual use of facts prohibition. (*People* v. *Lawson, supra,* 107 Cal.App.3d at pp. 752-757.) For that reason we decline to follow *Blessing* and hold that the trial judge, using the criteria set forth in rule 425 and subject to the dual use of facts prohibition should separately state his reasons for imposing the consecutive sentences.

However, we hasten to add that in our view the trial court need not separately state its reasons for each consecutive term. Penal Code section 1170, subdivision (b), provides in pertinent part that: "The court may not impose an upper term by using the fact of any enhancement upon which sentence is imposed under Section 667.5, 1170.1, 12022, 12022.5, 12022.6, or 12022.7." Nothing in the statute or rules precludes the sentencing court from using the same fact(s) as a basis for more than one consecutive sentence.

 Next we note two aggravating factors recited by the court which under the circumstances, on the present record, were improper. One is the recitation "that there are multiple violations involved ..." and the second is "that the crimes involve the taking of property which involved great monetary value;..."

In the instant case the crimes were all independent crimes committed at separate times against several victims. In *People* v. *Lawson, supra,* 107 Cal.App.3d at page 758, we held: "For example, the crime in count one did not involve multiple victims. It involved one victim. The court may not find that the crime at issue, singular not plural, involved multiple victims (see Cal. Rules of Court, rule 421(a)(4)) by adding victim(s) from independent crimes."[1]

 Turning to the "great monetary value" factor (Cal. Rules of Court, rule 421(a)(10)) the rule permits the use of this factor to aggravate even though it is not chargeable as an enhancement under Penal Code section 12022.6. The latter section requires the loss to exceed $25,000. In this case the value of the property taken in the Hankins burglary does not appear. It consisted of a .22 rifle, a shotgun, and a Montgomery Ward television. While the $25,000 enhancement figure is

---

[1]However, if the crimes had been transactionally related as part of the same incident the use of this enhancement factor would have been proper. (See *People* v. *Guevara* (1979) 88 Cal.App.3d 86, 93 [151 Cal.Rptr. 511].)

not controlling, unless these items were gold plated or diamond studded we do not believe that the ordinary value of the items taken would meet the test of having great monetary value. Upon remand the court should make inquiry as to the value so that a proper determination in this regard can be made.

A one-year enhancement was properly imposed for the prior armed robbery pursuant to Penal Code section 667.5, subdivision (b). Contrary to appellant's argument this enhancement is not optional and does not constitute a sentencing choice (see Cal. Rules of Court, rule 405(f)), and the court was not required to state reasons for its imposition. (*People* v. *Johnson* (1980) 104 Cal.App.3d 598, 611-612 [164 Cal.Rptr. 69].)

Further, however, appellant contends that the trial court made an improper dual use of facts when it imposed the prior prison term enhancement and included the same prison term with the factors for aggravation. Specifically, in aggravating the sentence the court said "the defendant has numerous prior convictions."

California Rules of Court, rule 421(b)(2), permits the court to use as an aggravating factor the fact that "The defendant's prior convictions as an adult or adjudications of commission of crimes as a juvenile are numerous or of increasing seriousness."

The record reflects that excluding the enhancement prior, appellant had suffered at least six prior convictions. Thus the court could establish the aggravated sentence even without the particular conviction at issue. Absent an affirmative indication in the record that the trial court included the enhancement prior as part of appellant's criminal pattern under rule 421(b)(2), we will not presume it was so used. (*People* v. *Roberson* (1978) 81 Cal.App.3d 890, 893 [146 Cal.Rptr. 777], where the aggravating factors "could only be based" on the enhancement factor; see Cal. Rules of Court, rule 409.) Further, under Penal Code section 667.5 the fact used for enhancement is not merely a prior conviction but a prior prison term. Accordingly, appellant's argument is without merit.

Finally, appellant argues that the trial court failed to consider the mitigating fact that under California Rules of Court, rule 423(a)(4)

and rule 423(b)(2),[2] the crimes were committed as a result of appellant's heroin habit.

The only evidence of addiction was appellant's self-serving statement in the probation report. At another point appellant told the probation officer that he was in good health. His counsel argued the point in mitigation. The court found that there were no circumstances in mitigation. *People* v. *Regalado* (1980) 108 Cal.App.3d 531 [166 Cal.Rptr. 614], which was a closely analogous case, controls. "It is perfectly plain that the mere assertion by a defendant that his or her 'conduct was partially excusable for ... [a] reason not amounting to a defense' (rule 423(a)(4)) or that he or she 'was suffering from a mental or physical condition that significantly reduced his culpability for the crime' (rule 423(b)(2)) does not establish that assertion as a fact. It is clear that the sentencing court must make that determination from the facts and circumstances of each particular case. In the instant case, the trial court had to determine first whether defendant's addiction to narcotics was operative when he committed the crime and second, to what extent, if any, it influenced the commission of the crime. If the court believed that defendant's mental or physical condition had contributed to the offense, it then would have been required to have made the most difficult assessment of all, namely whether the defendant's conduct was 'partially excusable' or his culpability 'significantly reduced' by the use of drugs. Moreover, since individual criteria in the rules have no fixed mathematical values, the court could decide that the mitigating influence, if any, was small. [Citation.]

"We believe that the facts of the instant case justify the sentencing court's implicit conclusion that defendant's drug use did not influence the commission of the burglary to an extent that 'partially excused' its commission." (*Id.*, at pp. 538-539.)

---

[2]Rule 423 provides in part: "Circumstances in mitigation include:

"(a) Facts relating to the crime, including the fact that:

" . . . . . . . . . . . . . .

"(4) The defendant participated in the crime under circumstances of coercion or duress, or his conduct was partially excusable for some other reason not amounting to a defense.

" . . . . . . . . . . . . . .

"(b) Facts relating to the defendant, including the fact that:

" . . . . . . . . . . . . . .

"(2) The defendant was suffering from a mental or physical condition that significantly reduced his culpability for the crime."

As in *Regalado*, the facts in this case support an implied finding that appellant's drug use did not influence the commission of the crime to an extent that "partially excused" its commission. Appellant was not under the influence of narcotics when he committed the crimes, which crimes demonstrated planning and sophistication.

Accordingly, the trial court properly found no mitigating factors.

The judgment is reversed solely for sentencing error and the cause is remanded to the trial court for resentencing in accordance with the guidelines set forth herein; the judgment is otherwise affirmed.

Andreen, J., and Hammerberg, J.,* concurred.

A petition for a rehearing was denied February 11, 1981.

*Assigned by the Chairperson of the Judicial Council.