[Crim. No. 11910. Fourth Dist., Div. One. Jan. 20, 1982.]

THE PEOPLE, Plaintiff and Respondent, v.
PETER MICHAEL PETERS, JR., Defendant and Appellant.

**COUNSEL**

Quin A. Denvir, State Public Defender, under appointment by the Court of Appeal, Victoria Sleeth, Deputy State Public Defender, and Peter Michael Peters, Jr., in pro. per., for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Daniel J. Kremer, Assistant Attorney General, Michael D. Wellington and Bruce D. Rosen, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**MALKUS, J.**\*—Peter Michael Peters, Jr., was charged in a three count information with robbery in violation of Penal Code[1] section 211 (Count I) with a gun use allegation within the meaning of section 12022.5, receiving stolen property in violation of section 496, subdivision 1 (Count II), and fraudulent possession of blank checks with intent to pass and defraud another in violation of section 475 (Count III). Two prison priors within the meaning of section 667.5, subdivision (b) were also alleged.

After Peters' motion to suppress and dismiss under sections 1538.5 and 995 were denied, trial commenced. The jury found Peters guilty on all counts and found the firearm use allegation to be true.

During trial and out of the jury's presence, Peters was advised of his rights to have the jury determine the truth of each of the prison priors, which he waived and elected to have the court so decide.

At the probation and sentencing hearing the court found the two prison priors to have been alleged and proved and after denying probation,

---

*Assigned by the Chairperson of the Judicial Council.

[1]All references are to the Penal Code unless otherwise specified.

sentenced Peters to the total term of nine years, eight months. The sentence was based on a five-year upper term for Count I, the principal term, along with a two-year enhancement for gun use and two years more for the prison priors. A consecutive sentence of eight months was imposed on Count III and an eight-month consecutive sentence was imposed on Count II and stayed pursuant to section 654.

Peters appeals and contends (1) there was insufficient evidence to convict him for violating sections 496, subdivision 1 and 475; (2) the trial court committed prejudicial error by initially instructing the jury the trial consumed a great deal of time and expense, and by further instructing the jury after a full day of deliberations sooner or later they had to reach a conclusion; (3) the trial court committed prejudicial error in instructing the jury on CALJIC Nos. 2.62 and 2.15 since there was no evidence to support the inferences contained in these instructions; and (4) if the judgment is affirmed, the case must be remanded for resentencing because of the court's failure to state any reason for imposing consecutive sentences.

We first review the evidence as to each count because if we determine the evidence was insufficient as to any particular count, a new trial would be barred as to that count under the double jeopardy clause of the Fifth Amendment (*Burks* v. *United States* (1978) 437 U.S. 1 [57 L.Ed.2d 1, 98 S.Ct. 2141]).

In connection with Count I, the factors show some time before 1 a.m. on March 3, 1980, a man accompanied by a woman entered Daisy's restaurant in Oceanside. The man was wearing a dark gray trenchcoat, dark pants, a light-colored sweater, black round-toed shoes and a dark ski mask rolled up and worn as a beanie. The couple was served at the counter by Laurie Hauer, a waitress. Steven Melsheimer, the restaurant manager, and Diana Nichols, a waitress, first saw the couple as they entered the restaurant.

At approximately 1 a.m., a man wearing a dark gray trenchcoat, black round-toed shoes, black pants, a light-colored sweater and a ski mask covering his face entered the restaurant's office and while holding a gun which looked like a .45 automatic, stated he wanted money. Present in the office were Steven Melsheimer and Diana Nichols. Melsheimer gave him approximately $2,100 in cash from the restaurant's safe, and he and Nichols got under the desk when the robber ordered them to do so and not to move for five minutes. The robber then fled.

Within about 30 seconds after the robbery, Melsheimer and Nichols returned to the dining room and observed the man they had seen earlier at the counter who was dressed identically to the robber, was gone. Nichols also recalled the robber had a small tattoo (a "Pachucha mark") on the web of his left hand between his thumb and forefinger. Prior to trial Melsheimer picked Peters' picture out of a photographic lineup and at trial, Melsheimer and Nichols positively identified Peters as the man at the counter.

On March 4, 1980, when Peters' car was properly stopped for a traffic violation, he was wearing a dark charcoal gray trenchcoat with black round-toed engineering shoes and had a half-inch thick stack of currency in denominations of 100, 50, 20 and 1 dollar bills. On March 9, 1980, when Peters was arrested, a .38 super automatic round of ammunition was found on the dash of his car. This ammunition is designed for a gun which looks like a .45 caliber automatic.

Regarding Counts II and III, on February 27, 1980, Florence Harris was robbed of her purse in Carlsbad. Her purse was later found in Oceanside but her wallet with $140, a check guarantee card and her checkbook was missing.

On March 9, 1980, when Peters was arrested for the robbery in Count I, a search of his car revealed Harris' checkbook and check guarantee card, the license of Deborah Grose, and the medical identification card of Sandra Clendening. These items were found behind the driver's sun visor. Clendening, a coworker of Grose, was present at the time of the search. Additionally, Peters displayed to the police a fake Geneva identification card with his name on it.

■ "In reviewing a criminal conviction, an 'appellate court must determine whether a reasonable trier of fact could have found the prosecution sustained its burden of proving the defendant guilty beyond a reasonable doubt.' [Citations.] The substantial evidence rule is our yardstick for determining whether a verdict meets this minimal standard of reasonableness: 'The test on appeal becomes whether substantial evidence supports the conclusion of the trier of fact, not whether the evidence proves guilt beyond a reasonable doubt.' [Citations.] ■ To be considered substantial, evidence must be of the type which 'reasonably inspires confidence and is "of solid value."' [Citation.]" (*People* v. *Reyes* (1974) 12 Cal.3d 486, 496-497 [116 Cal.Rptr. 217, 526 P.2d 225].)

■ This court must review the record in the light most favorable to the prosecution (*People* v. *Thompson* (1980) 27 Cal.3d 303, 324 [165 Cal.Rptr. 289, 611 P.2d 883]; *People* v. *Johnson* (1980) 26 Cal.3d 557, 576 [162 Cal.Rptr. 431, 606 P.2d 738]) and does not review or reweigh the evidence de novo. ■ The relevant inquiry for us is whether "'*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" (*People* v. *Johnson, supra,* at p. 576; quoting *Jackson* v. *Virginia* (1979) 443 U.S. 307 [61 L.Ed.2d 560, 99 S.Ct. 2781].) This evaluation is a twofold process which involves a review of the whole record, as well as the evidence of each of the essential elements of the crime (*People* v. *Thompson, supra,* 27 Cal.3d at p. 325).

■ The gravamen of Peters' challenge to the sufficiency of evidence in Count II (§ 496, subd. 1) is the evidence fails to establish the essential element Peters knew the property found in his car (Harris' checkbook and check guarantee card) was stolen. (See *People* v. *Martin* (1973) 9 Cal.3d 687, 695 [108 Cal.Rptr. 809, 511 P.2d 1161].) He claims the evidence showed Peters had "but mere access or proximity to stolen goods," this proximity was insufficient to infer possession, and dominion and control over the stolen items must be shown. (See *People* v. *Myles* (1975) 50 Cal.App.3d 423, 429 [123 Cal.Rptr. 348].) He admits there is a reasonable inference he had such control, but argues when other evidence is considered the mere position of the property raises at least one other equally reasonable inference. In making this argument Peters misconstrues the substantial evidence test. What Peters has asked to do is reweigh the evidence.

In *People* v. *McFarland* (1962) 58 Cal.2d 748, 754 [26 Cal.Rptr. 473, 376 P.2d 449], the Supreme Court stated: "Possession of recently stolen property is so incriminating that to warrant conviction there need only be, in addition to possession, slight corroboration in the form of statements or conduct of the defendant tending to show his guilt. [Citations.] This court stated in *People* v. *Lyons*, 50 Cal.2d 245, 258 . . . , '[P]ossession of stolen property, . . . an unsatisfactory explanation of the possession, or by suspicious circumstances, will justify an inference that the goods were received with knowledge that they had been stolen. The rule is generally applied where the accused is found in possession of the articles soon after they were stolen.'"

The jury rejected appellant's explanation that Clendening, or someone else, placed the stolen goods in his vehicle. The fact the items were

found in Peters' vehicle behind the driver's sun visor is a suspicious circumstance that could easily justify the inference that the goods were received with knowledge that they had been stolen. This evidence is not "so fraught with uncertainty as to preclude a confident determination of guilt beyond a reasonable doubt." (*People v. Reyes, supra*, 12 Cal.3d 486, 500.) Substantial evidence supports the conclusion of the trier of fact as to Count II (*People v. Pierce* (1979) 24 Cal.3d 199 [155 Cal.Rptr. 657, 595 P.2d 91]).

■ As to Count III (§ 475), Peters contends there was no evidence he attempted or intended to fill in and pass the checks to defraud another. He claims the fact the checks were in a woman's name and the false identification was in his name were insufficient to demonstrate this intent. Furthermore, he asserts the only other evidence of intent was his association with Clendening and this mere association cannot constitute substantial evidence of the requisite intent under section 475.

What Peters attempts to do is to isolate each bit of circumstantial evidence and argue each separately is insufficient to establish the intent. However, when the totality of circumstances is examined, it is reasonable for the trier of fact to conclude Peters intended to procure another to pass the checks (§ 475). Accordingly, we determine substantial evidence supports the conclusion of the trier of fact as to Count III (*People v. Pierce, supra*, 24 Cal.3d 199).

■ We next consider Peters' contention prejudicial error was committed by the trial court's instructing the jury under CALJIC Nos. 2.15 and 2.62. As part of the jury instructions relating to Counts II and III, the court read CALJIC No. 2.15 in its entirety, including a bracketed paragraph. This instruction, as read, is as follows: "The mere fact that a person was in conscious possession of recently stolen property is not enough to justify his conviction of the crime charged in [Counts II and III of] the information. It is, however, a circumstance to be considered in connection with other evidence. To warrant a finding of guilty, there must be proof of other conduct or circumstances tending of themselves to establish guilt.

"[In this connection you may consider the defendant's false or contradictory statements, if any, and any other statements he may have made with reference to the property. If a person gives a false account of how he acquired possession of stolen property this is a circumstance that

may tend to show guilt.]" Peters contends the court erred in reading the bracketed language.

The court also instructed the jury under CALJIC No. 2.62 in the following manner: "It is a constitutional right of a defendant in a criminal trial that he may not be compelled to testify, and the decision as to whether he should testify is left up to the defendant, acting with the advice and assistance of his attorney.

"In this case, the defendant has elected to, and has testified as to certain matters. If you find in his testimony that he failed to explain or deny evidence against him introduced by the prosecution, which he can reasonably be expected to deny or explain because these would be facts within his knowledge, then you may take that failure into consideration as tending to indicate the truth of this evidence against him, and as indicating that, among the inferences that may reasonably be drawn, those unfavorable to the defendant, or more probable.

"However, obviously if the evidence which is unfavorable to the defendant is the kind of evidence he would not normally have knowledge of so the knowledge he would need to have in order to deny or explain it, then, of course, his failure to deny or explain such evidence should not create any unreasonable or adverse inferences to the defendant.

"Also, the failure of the defendant to deny or explain any evidence against him does not create a presumption of guilt, and it does not by itself warrant an inference of guilt, nor does it relieve the prosecution of its burden of proving every essential element of the crime, and the guilt of the defendant beyond a reasonable doubt.

"Here again, ladies and gentlemen, I would call your attention to the fact that I am giving an instruction to you which may fit within the fact, but may not, depending upon the facts as you find them. I am talking here about your reaction to the failure of the defendant to explain or deny facts introduced by the prosecution which are adverse to the defendant.

"Obviously, the prosecution has contended, and are in his closing argument, that there are facts that the defendant failed to explain adequately, which he should have been able to explain.

"The defense counsel, on the other hand, takes quite the opposite point of view, and says that the defendant, in fact, explaining as best he could, and as best that you can expect him to explain everything, and that there's nothing left that he could testify.

"So you were the finders of fact. You have to decide about that. If you find that the defense version or approach to the evidence is correct, why, then, of course, this instruction has no application." Peters contends this entire instruction as given, requires reversal.

Peters contends the trial court erred in giving these instructions because no evidence appears on the record which if believed will support the suggested inference (*People* v. *Saddler* (1979) 24 Cal.3d 671 [156 Cal.Rptr. 871, 597 P.2d 130]). He asserts his statements at trial were denials of guilt and were not false and contradictory statements about the stolen property in his car. He also argues there was absolutely nothing he failed to explain or deny which was within his knowledge regarding any count.

We agree with Peters that these instructions were improperly given. "The trial court has the duty to instruct on general principles of law relevant to the issues raised by the evidence [citations] and has the correlative duty 'to refrain from instructing on principles of law which not only are irrelevant to the issues raised by the evidence but also have the effect of confusing the jury or relieving it from making findings on relevant issues.' [Citation.] 'It is an elementary principle of law that before a jury can be instructed that it may draw a particular inference, evidence must appear in the record which, if believed by the jury, will support the suggested inference' [citations]." (*People* v. *Saddler, supra,* 24 Cal.3d 671, 681.)

The bracketed portion of CALJIC No. 2.15 refers to any false or inconsistent statements made by appellant concerning the property in his car. This is optional and is to be given only when warranted by the evidence. It is apparent from the wording of the section it refers to accounts defendant made of how he acquired the property. However, in this case there were no such accounts given by Peters. He merely denied knowledge the stolen items were in his car. No evidence was introduced he had ever stated otherwise or offered any other explanation of how the property came into his possession. Although it is true the jury could disbelieve his denial, this instruction only involves a particular way in which the jury may choose to evaluate such a denial, that is, by evi-

dence of prior contradictory statements or statements inconsistent with Peters' position at trial. Thus, it is only to be given if such an inference can be drawn. No such evidence was introduced and therefore the instruction was improperly given (*People v. Saddler, supra,* 24 Cal.3d 671).

It is also significant to note in instructing the jury on CALJIC No. 2.62 the court did not attempt to limit its application to any of the three counts. Peters argues 2.62 should not have been given in regard to any of the counts and we agree. *People v. Saddler, supra,* 24 Cal.3d 671, is instructive. In *Saddler,* where the defendant was charged with violating section 211, the court held although there were contradictions between the defendant's testimony and that of the prosecution witnesses, a contradiction is not a failure to explain or deny which warrants giving CALJIC No. 2.62. In *Saddler,* as in this case, defendant gave an alibi, being elsewhere during the robbery. He gave a full testimonial account of his whereabouts and denied committing the charged offense. Thus, although contradicted by other evidence of his whereabouts at the time of the robbery, the court found he had explained all facts that were in his particular knowledge (his whereabouts) and thus there was no support on the record for drawing the adverse inference under 2.62.

Similarly in this case, Peters presented an alibi defense to Count I, the robbery, and made a general denial of his awareness of the presence of the stolen goods in his car in relation to Counts II and III. He explained the reason he was carrying $500 cash on March 4, 1980, the reason for his possessing false identification, how he came into possession of the .38 super automatic round, denied knowledge of the presence of the stolen goods in his car and claimed he was with his parents the night of the robbery. While the jury may have chosen to disbelieve his explanation for other reasons, Peters nonetheless did not fail to explain or deny the evidence presented against him. This instruction was unwarranted as to any of the three counts.

While we are satisfied the court erred by including the bracketed portion of CALJIC Nos. 2.15 and 2.62 in its instructions to the jury, we do not determine the mere giving of those instructions requires reversal. Indeed, that should occur only after an examination of the entire cause, including the evidence, if the reviewing court is of the opinion it is reasonably probable a result more favorable to the appealing party would have been reached in the absence of the error (*People v. Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243]).

In reviewing the evidence concerning Count I, we are convinced it was substantial. Nichols and Melsheimer made positive identifications of Peters. He was seen on March 4 in similar attire to that of the robbery suspect. He also had $500 cash in his wallet. Peters had a Pachucha mark on the web of his left hand as did the robber. Peters admitted frequenting Daisy's diner in the past and was seen with Sandra Clendening at Daisy's shortly before the robbery. Peters was a friend of Clendening and in fact rented an apartment on her behalf. A .38 super automatic round which fits a handgun similar to the one described as being used in the robbery, was found in Peters' car on March 9th. As to Counts II and III the evidence has already been discussed. It is sufficient to observe after consideration of the circumstances surrounding the accusations in Counts I, II and III, the strength of the evidence presented as to each count and the fact the jurors were instructed in accordance with CALJIC No. 17.31, which instructed them to disregard these instructions if they considered them not to fit within the facts, we are persuaded these errors were harmless (*People v. Maler* (1972) 23 Cal.App.3d 973 [100 Cal.Rptr. 650]).

Peters also urges on appeal if the judgment is affirmed, the case must be remanded for resentencing because of the court's failure to state any reason for imposing consecutive sentences as required by section 1170, subdivision (c) and California Rules of Court, rule 443. Due to the overlap between rule 425 which provides the criteria for consecutive sentences and rule 421 which sets forth the criteria for aggravation as well as the rule 443 requirement, the trial court must at the time of sentencing state in the record its reasons for imposing consecutive sentences and aggravation so as to avoid problems with dual use of facts. (See *People v. Bejarano* (1981) 114 Cal.App.3d 693, 704-705, 708 [173 Cal.Rptr. 71]; *People v. Lawson* (1980) 107 Cal.App.3d 748, 752-758 [165 Cal.Rptr. 764].)

Respondent concedes and we find the court failed to state reasons for the imposition of consecutive sentences. Therefore, the judgment, if affirmed, must be remanded for resentencing.

The remaining contention on appeal questions the propriety and effect of certain instructions by the court both prior to and after the jury deliberation process had begun. The jury heard evidence for three full days after which the court began instructing them. Due to the hour, an overnight recess was necessary and the instructions were completed the following morning. In completing the instructions, the trial judge

told the jury: "... [W]e do expect and hope that you will reach verdicts. If you don't reach a verdict, then we will not have resolved the issues put to you at such great time and expense, not only of the court processes, but of you. So we hope and expect that you will reach verdicts."

At approximately 9:05 a.m. the jury returned to begin deliberations. At 1 p.m., after an hour for lunch, the jury resumed their deliberations and continued until 4:30 p.m. At 4:30 p.m. the jury returned to the courtroom and the following colloquy occurred between the trial judge and members of the jury: "The Court: What's this? No verdict yet. Good heavens. Did you listen to all these instructions about keeping an open mind and discussing?

"Juror No. 7: Discussing sufficient—

"Juror No. 12: *We have been keeping an open mind, our minds have been wide open.*

"The Court: *Sooner or later, you have got to shut them and reach a decision.* You want to go home now, though. Come back Monday. All right. What time do you want to come back Monday?

"Juror No. 1: 9:00 o'clock.

"The Court: You have agreed on that. Okay, fine.

"Juror No. 5: We took a majority vote on that.

"The Court: You have to stop deliberating now until Monday. Don't talk to anybody about the case. Don't go out to Alice's restaurant— Daisy's restaurant. We will see you on Monday." (Italics added.)

At 9 a.m. Monday, June 23, 1980, the jury resumed deliberations. At 9:45 a.m. the foreman sent the judge a note requesting the court reread instructions "concerning circumstantial evidence, and the giving the defendant the benefit of the doubt, [and] how to determine [the] validity of a witness and their testimony." After some discussion between the bench and both counsel, the court, which had not previously provided the jury with copies of the instructions, decided to submit appropriately edited copies of all of the instructions.

The court verbally reinstructed the jury on the points raised by the foreman's request and at the time the written instructions were submitted, he stated: "Ladies and gentlemen, I hope you will review these to the extent that you think necessary, because you are supposed to follow the rules of law. *On the other hand, don't spend an awful lot of time with this. This is very technical, and if you really read and understand all these, you may spend an awful lot of time.* Just review the ones you are worried about." (Italics added.)

At about 10:05 a.m. the jury resumed deliberations. At 12:05 p.m. the jury returned with guilty verdicts on all three counts.

Peters contends these comments of the court, so-called mini-*Allen* charges, taken together improperly pressured the jury into reaching a decision. In support, he cites *People* v. *Gainer* (1977) 19 Cal.3d 835, 852 [139 Cal.Rptr. 861, 566 P.2d 997, 97 A.L.R.3d 73], and *People* v. *Barraza* (1979) 23 Cal.3d 675 [153 Cal.Rptr. 459, 591 P.2d 947]. Peters further contends the instructions were prejudicial because they coerced the jury into reaching a decision.

The People argue *Gainer* and *Barraza* involved situations where charges were made to deadlocked juries with the effect of coercing the minority into changing their vote to agree with the majority. Distinguishing the present case, the People point out the jury foreman indicated the members of the jury were open minded, and not that they were deadlocked. Therefore, the People contend no minority was coerced into agreement with the majority.

Justice Mosk in *Gainer* noted, "... when the statement is the central feature of instructions given to a deadlocked jury, it is more likely to have tainted their subsequent verdict than when the panel has evinced no division and the statement merely accompanies a requested rereading of portions of the testimony or previous instructions." (*People* v. *Gainer, supra,* 19 Cal.3d 835, 856, fn. 20.)

█ A review of the deliberative function of the jury is necessary for any understanding of the types of coercive impact involved in this case. It is a well settled principle of law in this state that because a criminal defendant's right to a jury trial (Cal. Const., art. I, § 16) includes the right to the unanimous verdict of 12 impartial jurors (*People* v. *Pierce, supra,* 24 Cal.3d 199, 208; *People* v. *Wheeler* (1978) 22 Cal.3d 258, 264-265 [148 Cal.Rptr. 890, 583 P.2d 748]; *People* v.

*Feagley* (1975) 14 Cal.3d 338, 350 [121 Cal.Rptr. 509, 535 P.2d 373]), a conviction "cannot stand if even a single juror has been improperly influenced." (*People* v. *Pierce, supra,* 24 Cal.3d 199, 208.) At the heart of this right to a unanimous verdict is the defendant's right to have the jury reach a verdict, if they can, only after the jury has deliberated on the evidence. In *Allen* v. *United States* (1896) 164 U.S. 492 [41 L.Ed. 528, 17 S.Ct. 154], the Supreme Court recognized although a verdict should represent the opinions of each individual juror, "[t]he very object of the jury system is to secure unanimity by a comparison of views, and by arguments among the jurors themselves. . . . It cannot be that each juror should go to the jury room with a blind determination that the verdict shall represent his opinion of the case at that moment, or that he should close his ears to the arguments of men who are equally honest and intelligent as himself." (*Id.* at p. 501 [41 L.Ed. at p. 531].) Justice Douglas, dissenting in *Johnson* v. *Louisiana* (1972) 406 U.S. 356 [32 L.Ed.2d 152, 92 S.Ct. 1620], eloquently described the importance of the deliberative process. In refuting the majority's decision permitting states to forego the federal constitutional requirement of a unanimous jury verdict in criminal cases he wrote: "The plurality approves a procedure which diminishes the reliability of a jury. . . . [¶] The diminution of verdict reliability flows from the fact that nonunanimous juries need not debate and deliberate as fully as must unanimous juries. As soon as the requisite majority is attained, further consideration is not required either by Oregon or by Louisiana even though the dissident jurors might, if given the chance, be able to convince the majority. . . . [B]ecause jurors are often not permitted to take notes and because they have imperfect memories, the forensic process of forcing jurors to defend their conflicting recollections and conclusions flushes out many nuances which otherwise would go overlooked. This collective effort to piece together the puzzle of historical truth, however, is cut short as soon as the requisite majority is reached . . . . Indeed, if a necessary majority is immediately obtained, then no deliberation at all is required in these States. . . . The Court now extracts from the jury room this automatic check *against hasty factfinding by relieving jurors of the duty to hear out fully the dissenters.* [¶] . . . [H]uman experience teaches that polite and academic conversation is no substitute for the earnest and robust argument necessary to reach unanimity." (*Johnson* v. *Louisiana, supra,* 406 U.S. at pp. 388-389 [32 L.Ed.2d at p. 175], italics added.)

██ Deliberation must be the very essence of the jury's function. Thus the question of what, if any, is the coercive impact of these jury

charges can only be answered after an evaluation of whether the deliberative process has been undermined. Coercion refers to that which operates to displace deliberation "in favor of consideration of compromise and expediency." (*People* v. *Gainer, supra*, 19 Cal.3d 835, 850.) It deprives the defendant of the benefit of the jury's full and independent consideration of his guilt or innocence and undermines the right to a unanimous verdict.

█ Assuming arguendo that the instructions given were mini-*Allen* charges under *Gainer* and *Barraza*, reversal is not required, because prejudice has not been demonstrated (*Gainer, supra*, 19 Cal.3d at pp. 855-856). In gauging the coercive, prejudicial effects of such an instruction we are guided by considerations of the nature of the instructions, the timing of when it is given, the number of times it is given and the compounding influence if given along with other mini-*Allen* charges (*People* v. *Barraza, supra*, 23 Cal.3d 675).

The statement by the court here is immediately followed by "You want to go home now, though. Come back Monday. All right, what time do you want to come back Monday?" To suggest this puts any pressure on the jurors is unrealistic. No prejudice can be found.

The sentence imposed is vacated and the matter remanded to the trial court for resentencing consistent with the views expressed in this opinion. In all other respects, the judgment is affirmed.

Cologne, Acting P. J., and Staniforth, J., concurred.

Petitions for a rehearing were denied February 9 and February 16, 1982, and appellant's petition for a hearing by the Supreme Court was denied April 28, 1982. Bird, C. J., Mosk, J., and Broussard, J., were of the opinion that the petition should be granted.