[Crim. No. 6089. Second Dist., Div. One. June 13, 1958.]

THE PEOPLE, Respondent, v. ALEX PLATNICK, Appellant.

Cary G. Branch, under appointment by the District Court of Appeal, for Appellant.

Edmund G. Brown, Attorney General, and Norman H. Sokolow, Deputy Attorney General, for Respondent.

· WHITE, P. J.—In an information filed by the district attorney of Los Angeles County, defendant was charged with the crime of burglary, allegedly committed on or about June 16, 1957, in that he entered the office, warehouse and building occupied by E. C. Nesser Company, in the city of Los Angeles, with the intent to commit theft. It was also alleged that defendant suffered three prior felony convictions and served terms of imprisonment therefor in the state prison: burglary, with judgment rendered on or about June 23, 1937; burglary, with judgment rendered on or about April 26, 1945; and petty theft with prior conviction of felony, with judgment rendered on or about April 10, 1952. Defendant pleaded not guilty and denied the prior convictions alleged. Trial by jury was duly waived, and by stipulation the People's case was submitted on the transcript of testimony adduced at the prelimi-

nary examination, with each side reserving the right to offer additional testimony. After reading the aforesaid transcript and consideration of additional testimony, the court adjudged defendant guilty as charged and found the offense to be burglary of the second degree. The prior convictions alleged were found to be true. Defendant's motion for a new trial was denied and he was sentenced to state prison. From the judgment of conviction and the order denying his motion for a new trial defendant prosecutes this appeal.

Concerning the factual background surrounding this prosecution, the record reflects that the office building of a general contractor, E. C. Nesser, was located at 4822 West Jefferson Boulevard, in the city of Los Angeles; and on Saturday, June 15, 1957, the superintendent of said business closed the premises securely upon leaving. Monday morning, June 17, 1957, it was discovered that the premises had been broken into and that an entry had been made into the building through a back window. A number of articles had been taken from the premises, including a typewriter, an adding machine, and several hand drills. On the afternoon of the 17th of June, 1957, Officer C. W. Bates of the Los Angeles Police Department, received some information from a police officer of the city of Vernon concerning the premises at 649 South Crocker Street, Los Angeles, and upon arriving at said premises, occupied by Mr. and Mrs. Ignacio Lopez, he found most of the property that had been taken from the Nesser Construction office. When Officer Bates arrived at the premises only Mrs. Julie Lopez, the wife of Ignacio Lopez, was present. While the officer was there Ignacio Lopez entered and was placed under arrest. After that, about 2:30 p. m. of the same afternoon, the defendant Alex Platnick arrived at the premises and was placed under arrest. Besides Mr. and Mrs. Lopez and their child, one William Persing lived at the premises at 649 South Crocker Street. The defendant did not live at the South Crocker Street address. On Friday, June 21, 1957, Ignacio Lopez was released from custody and he became the principal witness against the defendant, who was charged with burglary that same day.

The defendant buys up junk and sells it to dealers and has been an acquaintance of Mr. and Mrs. Lopez for at least a year, and on many occasions has hired Ignacio Lopez to help him in the junk business. On Monday, June 17th, the date of the arrest of Lopez and the defendant, they had been working together on hauling and selling some junk.

Sworn as a witness for the prosecution, the aforesaid Ignacio Lopez testified that on Sunday, June 16, 1957, he met defendant in the vicinity of Broadway and 25th Street about 10 a. m., where the witness had gone to do some repair work on defendant's automobile. About 4:30 p. m. on the same day, Mr. Lopez had a conversation with defendant on 7th Street at the J & B Bar. The latter came in and told Mr. Lopez that he had some items in his automobile; that he wanted to put them in Mr. Lopez's house and that he had already told the person who owned the house about it.

Thereafter, Mr. Lopez and defendant went to see the owner or landlord of the house, Mr. Wendell Persing. Mr. Lopez asked the latter if they could put the items in the house and he said it was all right. Thereupon, Mr. Lopez and defendant went back to the automobile and drove to the house which was at 649 South Crocker Street, arriving at about 5 p. m. They unloaded the items from the automobile. (As they were finishing the unloading a Mr. Phillips passed by with his automobile.) These items consisted of the property taken in the burglary here under consideration. Mr. Lopez testified he had not seen them in defendant's automobile earlier that day. Thereafter, Mr. Lopez and defendant returned to the aforesaid bar where they had a drink after which defendant departed, stating he was going over to Broadway. About 6 p. m. defendant returned to the bar and handed Mr. Lopez a paper sack, telling him to take the package home and that he would pick it up the next day. In the sack was a pair of shoes, marked People's Exhibit Number 2. Mr. Lopez took the shoes to his house and gave them to his wife who put them away.

(These shoes appeared to have cloth tops. They were tried on by both Mr. Lopez and defendant during the proceedings. There appeared to be more than an inch of space between the great toe and the end of the shoe, in the case of Mr. Lopez. In the case of defendant there appeared to be about an inch. The trial judge noted that the appearance of the shoes was such as to indicate that they could have been in the dust outside the window of the burglarized premises.)

The morning of June 17th, defendant came to Mr. Lopez's place. Presently an old man arrived, whom Mr. Lopez had never seen before. This man talked with defendant. The latter told Mr. Lopez to show the man the tools. Mr. Lopez complied. The man also looked at the typewriter and adding machine. He asked Mr. Lopez what the price was on the tools.

Mr. Lopez said he did not know anything about it. The man went back and spoke with defendant, then he left.

The shoes marked People's Exhibit Number 3 were the ones defendant was wearing when he gave Mr. Lopez the package containing the shoes marked People's Exhibit Number 2 on June 16th. This was after defendant had gone to Broadway. Prior thereto, defendant had been wearing the shoes marked People's Exhibit Number 2. The shoes marked People's Exhibit Number 3 were brand new.

Mrs. Julie Lopez, wife of the witness Ignacio Lopez, was residing with him at 649 South Crocker Street on June 16, 1957. They were renting from Mr. Wendell Persing. Around 4:30 or 5:00 p. m. that day defendant came in and asked Mr. Lopez to help him unload some items he had in his automobile. Mr. Lopez helped defendant unload the merchandise from the automobile and into the house. As Mrs. Lopez recalled, there were adding machines and typewriters, and four or five boxes. Mrs. Lopez noted that defendant was wearing the gray shoes marked People's Exhibit Number 3 and asked him if they were the new shoes he had bought. Defendant said yes. The brown canvas shoes, marked People's Exhibit Number 2, looked like the ones defendant used to wear before he bought the others. She had seen defendant, whom she had known about a year, wearing such shoes prior to the occasion in question.

Edmund Lovold, a Los Angeles city police officer, attached to the burglary division, testified he was acquainted with defendant, and had seen him on various occasions prior to June 16, 1957. Officer Lovold had occasion to arrest defendant on April 26, 1957, at which time the officer looked through his house. The officer noticed a pair of shoes similar to those marked People's Exhibit Number 2, in the closet of the bedroom. The officer further testified, "In my experience as a police officer, that is a shoe worn by burglars." He testified he had seen defendant wear such shoes on many occasions.

Alvin Schrier, a photographer employed by the Los Angeles Police Department, examined the exterior of the premises at 4822 West Jefferson Boulevard (the E. C. Nesser Company), on June 17, 1957, and took photographs there. He took the photograph marked People's Exhibit No. 4 directly at the rear of the office building about 18 inches from the wall. This photograph showed an imprint on the ground.

Charles Gabard, police officer for the city of Los Angeles, attached to the Scientific Investigation Division Crime Labora-

tory, and an expert in the comparison of physical evidence, compared the soles of the shoes marked People's Exhibit No. 2 with the imprint depicted in the photograph marked People's Exhibit Number 4. In his opinion the shoes were of approximately the same size as the imprint, and the imprint was made by a shoe such as one of those marked People's Exhibit Number 2, or one of similar tread. The same pattern appeared on the sole.

George Stockley, a police officer for the city of Los Angeles, testified he recovered the two pairs of shoes marked People's Exhibits Numbers 2 and 3. People's Exhibit Number 2 was recovered by the officer on June 18, 1957, at the Lopez residence, 649 South Crocker Street, where, at the request of the officer, Mrs. Lopez took them from beside a cabinet. The shoes marked People's Exhibit Number 3 (which were gray canvas) were being worn by defendant when the officer first observed them at the Central Jail. In response to a question, defendant stated he had purchased this pair of shoes at a downtown drug store.

As witnesses for the defendant, Mr .and Mrs. William R. Phillips, both referred to in the testimony of Ignacio Lopez, testified that on June 16th, about 5:30 or 6 p. m., there was a Buick automobile in the driveway at Lopez's house which blocked their exit and that they requested witness Lopez to move the car and that they did not see defendant Platnick or Wendell Persing there at the time.

Alex Platnick, the defendant, testified that for some time he had been engaged in the business of collecting metal and junk and selling the same to dealers; that he had known Lopez and his wife for some time and on many occasions had hired Mr. Lopez to help him in the junk business. That on the morning of June 17, 1957, the date of his arrest, the two had worked together collecting and selling copper. On Saturday, June 15th, Lopez had helped defendant remove the latter's automobile from impound near Broadway and 23rd Street. The key was missing and the car could not be started. The next morning about 10 o'clock Lopez met defendant at the car and Lopez, being a mechanic, "hot-wired" the vehicle, which defendant drove away. That about 1 p. m. defendant again saw Lopez at the B & J Bar on San Julian Street and gave the car to Lopez to work on because the gear was "jumping out." Lopez took the automobile and left defendant. The latter went to Lopez's house about 5:30 but Lopez had not fixed the car; defendant asked Lopez

if he would help him the next morning and agreeing, Lopez came to defendant's premises Monday, June 17th, about 10 o'clock. Later that day defendant went to Lopez's house to pay him for helping him with the copper, at which time he was arrested.

When questioned by the officer concerning the stolen articles found in Lopez's kitchen, defendant denied knowing anything about them. He has at all times denied the burglary charge and that he had any knowledge of the stolen articles being in Lopez's house. Defendant denied that the brown shoes (Exhibit No. 2), which were found in Lopez's house, belonged to him and denied he ever owned a pair like them except that a year or so ago he owned a pair similar but of a different color. During the trial defendant tried on the brown shoes in Exhibit Number 2 which shoes did not fit him by about an inch.

As his first ground for reversal of the judgment and order, appellant urges that the trial court erred in finding him guilty on the uncorroborated testimony of accomplices. He contends that Mr. and Mrs. Lopez were accomplices as a matter of law and that since their testimony was not corroborated as required by Penal Code, section 1111, no conviction could be legally based thereon. The code section just cited defines an accomplice as: ". . . one who is liable to prosecution for the identical offense charged against the defendant on trial in the cause in which the testimony of the accomplice is given." Penal Code, section 31, defines as principals: "All persons concerned in the commission of a crime . . ., and whether they directly commit the act constituting the offense, or aid and abet in its commission . . .". The question presented is whether, under the foregoing Penal Code sections, the witnesses Mr. and Mrs. Lopez were accomplices *as a matter of law.* ■ Appellant contends in effect that these witnesses were accomplices because the stolen articles were found at their home and in their possession. This is not necessarily true because while possession of stolen property, shortly after it is stolen, is a circumstance pointing to the guilt of the accused, there must be present, in addition to such possession, ". . . corroborating circumstances, such as acts, conduct or declarations of the accused tending to show his guilt" (*People* v. *Carroll,* 79 Cal.App.2d 146, 148 [179 P.2d 75]). ■ As was said in *People* v. *Lamb,* 134 Cal.App.2d 582, 585 [285 P.2d 941]: ". . . To be an accomplice one must knowingly, voluntarily, and with common

intent unite with the principal offender in the commission of the crime''. ■ While it is true, as stated by appellant, that Mr. Lopez was taken into custody and later released nevertheless, as was said in *People* v. *Newman,* 127 Cal.App.2d 430, 435 [273 P.2d 917], ''. . . the Legislature in enacting section 1111 of the Penal Code would not have intended that it should apply to every person at whom suspicion had been directed by investigating officers at the time of the discovery of a crime, or that such person should necessarily be considered an accomplice if called as a witness at the time of the trial.''

■ Since it could be inferred under the facts and circumstances present in the case now engaging our attention that Mr. and Mrs. Lopez were not accomplices, as a matter of law the question of whether they were was one for the duly constituted arbiter of the facts, and it will be presumed in favor of affirming the judgment that the trier of fact found that they were not accomplices. (*People* v. *Santo,* 43 Cal.2d 319, 326, 327 [273 P.2d 249] ; *People* v. *Brenon,* 138 Cal.App. 2d 795, 802, 803 [292 P.2d 645]).

■ Finally, appellant insists that aside from the question of whether Mr. and Mrs. Lopez were accomplices, the evidence in its entirety is insufficient to sustain his conviction in that there is no evidence other than that given by Mr. and Mrs. Lopez which merely showed possession of the stolen property by appellant unaccompanied by any corroborating circumstances. With this contention we cannot agree. There was present in the instant case evidence that appellant had the stolen property in his automobile on June 16th; on that date he prevailed upon Mr. Lopez to put the stolen articles in the latter's residence; on the same date he induced Mr. Lopez to keep for him the shoes he had been wearing marked People's Exhibit Number 2; and an imprint from a shoe similar to one of those marked People's Exhibit Number 2 was found at the burglarized premises. These facts furnish sufficient circumstantial and corroboratinve evidence to support the judgment of conviction (*People* v. *Carroll, supra,* p. 148; *People* v. *Acosta,* 114 Cal.App.2d 1, 2, 4 [249 P.2d 316]).

For the foregoing reasons, the judgment and the order denying defendant's motion for a new trial are, and each is affirmed.

Fourt, J., and Lillie, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied August 6, 1958.