Filed 4/8/14  P. v. Montes CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>GERARDO MONTES,<br><br>Defendant and Appellant. | D062949<br><br><br><br>(Super. Ct. No. JCF26154) |

APPEAL from a judgment of the Superior Court of Imperial County, Poli Flores Jr., Judge.  Affirmed as modified.

Patricia J. Ulibarri, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Barry Carlton and Adrianne S. Denault, Deputy Attorneys General, for Plaintiff and Respondent.

A jury convicted Gerardo Montes of one count of first degree murder (Pen. Code, § 187, subd. (a)) and found true three firearms-related sentencing enhancements (Pen. Code, § 12022.53, subds. (b), (c), and (d)).  Following his conviction, the trial court sentenced

Montes to an indeterminate term of 50 years to life imprisonment for the murder charge and the firearm enhancement found under Penal Code section 12022.53, subdivision (d). The court imposed and stayed terms of imprisonment for the firearm enhancements found under Penal Code section 12022.53, subdivisions (b) and (c).

Montes appeals, contending (1) that the trial court erred by not instructing the jury sua sponte that a witness at trial was a potential accomplice; (2) that the evidence was insufficient to corroborate the accomplice testimony offered at trial; (3) that his counsel was ineffective in failing to request accomplice instructions, failing to request a limiting instruction for a potential accomplice's guilty plea, and failing to object to improper testimony on the veracity of another trial witness; (4) that the trial court erred by denying Montes's motion for a new trial based on alleged jury misconduct; and (5) that the judgment should not have included a fee for Montes's court-appointed attorney. We modify the judgment to strike the court-appointed attorney fee. As modified, the judgment is affirmed.

FACTS

In the morning of August 29, 2010, a dove hunter scouting locations for the upcoming season discovered the body of 25-year-old Adrian Chee in an agricultural field near Winterhaven, California. Chee had been shot twice, once in the chest and once in the chin. The chest wound was fatal and caused Chee's death. Tire tracks were observed in the area surrounding the body, and Chee's leg appeared to have been run over. A vehicle also appeared to have damaged a nearby concrete canal wall. Near Chee's body, sheriff's department investigators found an open pack of Marlboro Red cigarettes. Investigators also found a used Marlboro Red cigarette butt between Chee's legs. The cigarette butt contained DNA from at

2

least two male contributors. After testing, Montes could not be eliminated as a contributor to the DNA found on the cigarette butt. Such a situation would be expected to occur at random in 1 in 2.1 billion African Americans, 1 in 75 million Caucasians, and 1 in 46 million Hispanics.

A witness living near the field in Winterhaven reported hearing a gunshot two nights prior to the discovery of Chee's body. Earlier on the night of the gunshot, Montes's house in Yuma, Arizona, was burglarized. Montes's wife, Sonia, called police and reported the burglary. When officers arrived, the door to the Montes's house had been forced open and the interior was ransacked. The officers spoke with Montes's wife; Montes himself was not present. Electronics, jewelry, and some amount of cash had been stolen. Montes's wife later provided an itemized list to police for insurance purposes.

Montes had been in prison with a man named Ernesto Valera, and after prison they remained friends. According to Valera, Montes called him on the night of the burglary. Valera asked Montes for some drugs, and Montes said he could get methamphetamine. A few hours later, Montes picked up Valera at Valera's house. Adrian Chee was with Montes in his Cadillac when Montes arrived at Valera's. Montes, Chee, and Valera bought some methamphetamine and proceeded to get high.

They then drove in Montes's Cadillac to Paradise Casino in Winterhaven to meet Valera's girlfriend, Melissa Barraza. Barraza had additional methamphetamine, but the men had broken the pipe they used to smoke methamphetamines earlier. Montes, Chee, and Valera, along with Barraza, went to the house of Shavon Mendez, also in Winterhaven, to get another pipe. Mendez was Montes's girlfriend. Montes went inside to ask for a pipe. Mendez confirmed to investigators that Montes had been at her house that night between 2:00 a.m. and

3

5:00 a.m., but at trial she testified she was at her mother's house all weekend and did not see Montes.

After leaving Mendez's house, Montes asked Valera to drive and directed him to a nearby agricultural field. After they parked, Montes accused Chee of burglarizing his house and wearing his watch. They stepped out of Montes's car and began to argue. Valera got out as well, but Barraza remained in the car. Montes pulled out a gun and aimed it at Chee. Chee said that he was not scared and that Montes would not shoot him. Montes fired, first at Chee's chest and then, as Chee was falling, at Chee's face. After Chee fell, Montes knelt down and took the watch from Chee's wrist.

Montes told Valera to get back in the car. Valera got in the driver's seat, and Montes got in the back seat. Valera backed up, ran over Chee, and hit a concrete irrigation canal. Montes angrily told Valera that he would drive. Montes then drove to Barraza's house, and the group used methamphetamines again. Montes changed into clothes provided by Barraza, and Valera and Montes buried the gun in Barraza's backyard. Montes called his wife, and she came to Barraza's house. Montes told her what had happened. Eventually they drove away, with Montes driving his Cadillac and his wife in a pickup truck.

The following day, Valera and Montes removed the tires from Montes's Cadillac and replaced them with used tires. Valera and Montes went to a local Walmart to look for tires, where they were captured on security cameras. Montes gave the old tires to Barraza to settle a drug-related debt. Barraza was later arrested on drug charges after trying to sell the tires to an undercover police officer. When questioned by investigators, Barraza recounted the events of

4

the evening, including that Montes had shot Chee. She said she did not report the murder because Montes had threatened her and she was afraid.

Valera and Montes eventually retrieved the gun from Barraza's backyard, and Valera broke it into pieces. Valera and Montes contacted two cousins, Delia Hayes and Meredith Barley, and offered them drugs to take the gun to Mexico and throw it away. Barley agreed and attempted to drive Montes's Cadillac across the border with the gun. Valera and Montes followed her in a separate car. Valera and Montes were going to Mexico to escape the country. Barley was turned back at the border because the Cadillac had only temporary "paper" license plates. After exiting the other car, Montes and Valera made it to Montes's brother's house in San Luis, Mexico on foot. Valera left the house at some point, and Montes's wife later convinced Montes to return home to Arizona.

Valera, Hayes, and Barley eventually disposed of the gun in a ditch on the U.S. side of the border. When investigators recovered the gun, they found two long black hairs on the handle, but no useful forensic testing could be performed on the gun or the hairs.

With information about his involvement, investigators interviewed Montes for approximately two hours. Montes confirmed that the Cadillac was his car and that no one other than he and his wife drove it. Montes denied knowing anyone in Winterhaven, and he said he had only been there in the morning to look for automotive parts at a junkyard. Montes was evasive when asked whether he knew Valera or Chee, but Montes eventually acknowledged that Chee looked familiar and that he knew Valera. Montes was also evasive when he was asked if he was at Paradise Casino at Winterhaven on the weekend of the murder. He initially said no, but then claimed he could have been there but been passed out. He

5

reported drinking heavily. Montes denied that Chee had ever been in his car or that he was involved in Chee's murder.

Montes was arrested and charged, along with Valera, with Chee's murder. Barraza was charged with being an accessory after the fact. Valera later reached a cooperation agreement with the prosecution. Valera agreed to testify at trial against Montes and plead guilty to being an accessory. The prosecution agreed to dismiss the murder charge against Valera. Barraza pled guilty to her accessory charge.

At Montes's trial, the prosecution called Valera and Barraza, among other witnesses. While Valera provided substantive testimony in accordance with his cooperation agreement, Barraza claimed not to remember the events surrounding Chee's murder. She was therefore impeached with her prior statements to investigators. Following Barraza's testimony, the prosecution uncovered a recorded telephone call between Montes, who was in custody, and an unknown female caller. The caller said she was in Salinas, California, and the conversation concerned a female witness who was being forced to come to testify at Montes's trial. Montes told the caller to tell the witness not to say anything. At the time of trial, Barraza lived in Salinas and was compelled to attend.

Montes's defense at trial argued that Valera had murdered Chee. Montes's wife, Sonia, testified that Montes was with her the night of Chee's shooting. She previously told investigators that she had some doubt as to where Montes was that night; he sometimes left during the middle of the night while she slept. She said she knew Chee, but she did not suspect Chee of burglarizing their house. She said that none of Montes's watches had been stolen and that she did not list any watches on the list of stolen items she submitted to police. She

6

confirmed that Montes smoked Marlboro Red cigarettes, the brand found at the scene of Chee's murder. An accident reconstruction expert also testified that Montes's Cadillac could not have made the tire tracks found at the scene of the murder. Montes did not testify.

DISCUSSION

I

A

Montes contends that the trial court erred by not instructing the jury sua sponte with CALCRIM No. 344 that Barraza could be found to be an accomplice and that her testimony might therefore require corroboration. Montes further contends that CALCRIM No. 301 should have been modified to reflect that such corroboration may be necessary. The trial court gave CALCRIM No. 344, and modified CALCRIM No. 301, to reflect Valera's potential accomplice status. Montes did not request Barraza's inclusion in these instructions.

"When the evidence at trial would warrant the jury in concluding that a witness was an accomplice of the defendant in the crime or crimes for which the defendant is on trial, the trial court must instruct the jury to determine if the witness was an accomplice." (*People v. Hayes* (1999) 21 Cal.4th 1211, 1270-1271.) "For instructional purposes, an accomplice is a person 'who is liable to prosecution for the identical offense charged against the defendant on trial in the cause in which the testimony of the accomplice is given.' [Citations.]" (*People v. Arias* (1996) 13 Cal.4th 92, 142-143.) "In order to be chargeable with the identical offense, the witness must be considered a principal under [Penal Code] section 31." (*People v. Fauber* (1992) 2 Cal.4th 792, 833 (*Fauber*).)

7

"An accomplice need not share in the actual perpetration of a crime to be chargeable as a principal therein; liability as an accomplice to a crime may be based on having aided and abetted its commission." (*People v. Snyder* (2003) 112 Cal.App.4th 1200, 1220.) "However, an aider and abettor is chargeable as a principal only to the extent he or she actually knows and *shares* the full extent of the perpetrator's specific criminal intent, and actively promotes, encourages, or assists the perpetrator with the intent and purpose of advancing the perpetrator's successful commission of the target offense." (*Ibid.*)

The trial court has a sua sponte obligation to provide an accomplice instruction when the evidence warrants. (*People v. Tobias* (2001) 25 Cal.4th 327, 330-331.) However, "[t]he court need give such instructions only where there is substantial evidence that the witness was an accomplice." (*People v. Boyer* (2006) 38 Cal.4th 412, 467.) The evidence must be sufficient "to permit a jury to conclude by a preponderance of the evidence" that the witness was an accomplice. (*People v. Hernandez* (2003) 30 Cal.4th 835, 874.)

Here, based on the evidence presented at Montes's trial, the court had no sua sponte duty to provide an accomplice instruction regarding Barraza. At most, the evidence showed that (1) Barraza was present with Montes, Valera, and Chee before Chee was shot; (2) Barraza witnessed Chee's shooting; and (3) Barraza aided Montes and Valera after the shooting by providing Montes with fresh clothes, allowing Valera to bury the gun in her backyard, and helping dispose of the tires on Montes's Cadillac. None of these facts provide evidence that would permit a jury to find that Barraza aided and abetted Chee's murder. As to the first two, "[t]he facts that she was at the scene [citation] or drove [with] the victim there [citation] do not make her an accomplice." (See *People v. Sully* (1991) 53 Cal.3d 1195, 1228; see also *People*

8

*v. Lewis* (2001) 26 Cal.4th 334, 369 ["Although [the witness] was at the scene of the crime and had intimate knowledge of the robbery and murder, this fact without more merely means that he was an eyewitness and not necessarily an accomplice to the crimes."].) As to the third, these facts establish that Barraza was an accessory to Chee's murder, not an accomplice. (See *Fauber, supra*, 2 Cal.4th at pp. 833-834 ["An accessory, however, is not liable to prosecution for the identical offense, and so is not an accomplice."].) Unlike *People v. DeJesus* (1995) 38 Cal.App.4th 1, on which Montes relies, there is no evidence that Barraza was aware of a plan to kill Chee, that Barraza agreed before the murder to assist Montes or Valera in disposing of the gun and other evidence, or that Barraza consciously failed to warn Chee of a plan to murder him. (See *id*. at p. 24.)

Montes's reliance on the facts in *Boyer* is misplaced because the Supreme Court declined to decide whether those facts gave rise to a sua sponte obligation to provide an accomplice instruction. (See *People v. Boyer, supra*, 38 Cal.4th at p. 468.) Similarly, in *People v. Williams* (1997) 16 Cal.4th 635 and *People v. Garrison* (1989) 47 Cal.3d 746, the Supreme Court did not consider whether the facts in those cases—which are distinguishable in any event—required a sua sponte accomplice instruction. Instead, the defendants in *Williams* and *Garrison* argued that the evidence justified an instruction that the jury must view the witnesses in question as accomplices as a matter of law. (*Williams,* at p. 679; *Garrison,* at p. 772.) The court found that no such instruction was required in either case. (*Williams,* at p. 679; *Garrison,* at p. 772.)

Montes argues that Barraza was an accomplice because she was initially charged with Chee's murder along with Montes and Valera. To support this assertion, Montes cites the

9

statement of Barraza's attorney, in open court, that she was so charged. Such a statement is not evidence, however, and it does not aid in satisfying Montes's burden of proving that Barraza was an accomplice. (See *Fauber, supra*, 2 Cal.4th at p. 834.) The charging documents in the record reflect that only Montes and Valera were charged with murder; Barraza was charged only as an accessory.

## B

Even if the court had a sua sponte obligation to provide an accomplice instruction, such an error is harmless "if there is sufficient corroborating evidence in the record." (*People v. Lewis, supra*, 26 Cal.4th at p. 370.) As we explain in part II, *post*, there was sufficient independent evidence to corroborate Barraza's statements. Any error was therefore harmless. We reject Montes's contention that we should reconsider the well-settled principles of harmless error that our Supreme Court has established in this circumstance. (See *People v. Gonzales and Soliz* (2011) 52 Cal.4th 254, 303-304 (*Gonzales*).) Montes's additional arguments regarding prejudice, including the length and nature of the jury's deliberations, do not address the dispositive issue of corroboration and are unpersuasive in any event.

## II

Montes contends that there was insufficient evidence to corroborate Valera's trial testimony and, assuming she is also an accomplice, Barraza's out-of-court statements. As noted *ante*, the trial court instructed the jury with CALCRIM No. 344, and a modified version of CALCRIM No. 301, on Valera's potential accomplice status and the consequences of such a finding by the jury.

10

As an initial matter, it is unclear whether we may inquire into the sufficiency of the corroborating evidence where, as here, the question of a witness's accomplice status was properly left to the jury. "[A]s a reviewing court, we are bound to presume in favor of affirming the judgment that the jury found that he was not an accomplice." (*People v. Santo* (1954) 43 Cal.2d 319, 326-327; see also *People v. Platnick* (1958) 161 Cal.App.2d 313, 320.) Given this presumption, Valera's testimony would require no corroboration and, in fact, would appear to be sufficient by itself to corroborate Barraza's statements. (See *People v. Tewksbury* (1976) 15 Cal.3d 953, 959, 962.) However, because the parties have not addressed this issue, and because we conclude that sufficient independent evidence was introduced at trial to corroborate both Valera's testimony and Barraza's statements, we decline to rule on this basis.

The requirement for corroboration is set forth in the Penal Code: "A conviction can not be had upon the testimony of an accomplice unless it be corroborated by such other evidence as shall tend to connect the defendant with the commission of the offense; and the corroboration is not sufficient if it merely shows the commission of the offense or the circumstances thereof." (Pen. Code, § 1111.)

" '[T]he prosecution must produce independent evidence which, without aid or assistance from the testimony of the accomplice, tends to connect the defendant with the crime charged. [Citation.]' [Citation.]" (*People v. Rodrigues* (1994) 8 Cal.4th 1060, 1128.) " 'Corroborating evidence may be slight, may be entirely circumstantial, and need not be sufficient to establish every element of the charged offense.' [Citation.] The evidence is 'sufficient if it tends to connect the defendant with the crime in such a way as to satisfy the jury that the accomplice is telling the truth.' [Citation.]" (*Gonzales, supra*, 52 Cal.4th at p. 303.) A

11

defendant's own statements and actions, including those evidencing a consciousness of guilt, may provide sufficient corroboration. (See *People v. Avila* (2006) 38 Cal.4th 491, 563.)

Here, setting aside Valera's testimony and Barraza's inculpatory statements, the prosecution presented sufficient independent evidence connecting Montes with Chee's murder. Shavon Mendez confirmed to investigators that Montes was in Winterhaven on the night of Chee's murder, that Montes came to her house near the field where Chee was eventually killed, and that Montes attempted to borrow a pipe to smoke methamphetamines. The cigarette butt found between Chee's legs, which effectively matched Montes's DNA, placed Montes at the scene of Chee's murder. Montes's Cadillac was also there, as shown by the connection between the damage to the concrete canal wall near Chee's body and the damage to the undercarriage of Montes's Cadillac. Delia Hayes testified at trial that Montes was involved in the deal to exchange drugs for help disposing of the gun after the murder. Montes himself was at best evasive when asked about his knowledge of Chee and Valera and his whereabouts on the night of the murder. Shortly before trial, Montes spoke with an unknown female to make sure that a witness, presumably Barraza, did not say anything during her trial testimony.

Montes argues that none of this evidence directly proves that he was Chee's killer. The evidence, in Montes's view, is equally consistent with a scenario in which Valera was Chee's killer and thus cannot corroborate Valera's testimony and Barraza's statements. We disagree. Corroborating evidence need not itself establish the basis for a defendant's conviction. (See *People v. Garrison, supra*, 47 Cal.3d at p. 773.) It need only be sufficient to satisfy the jury that the accomplice testimony, which may provide such a basis, is trustworthy. (See *Gonzales, supra*, 52 Cal.4th at p. 303.) Because the evidence here " 'tends to connect the defendant with

12

the crime' " charged, it is sufficient corroboration of Valera's testimony and Barraza's statements. (See *ibid.*; *People v. Rodrigues, supra*, 8 Cal.4th at p. 1128.)

## III

## A

Montes contends that his counsel was ineffective in failing to request accomplice instructions regarding Barraza, failing to request a limiting instruction for Valera's guilty plea to his accessory charge, and failing to object to an improper comment by a testifying sheriff's department investigator on the veracity of another trial witness.

"A defendant claiming ineffective assistance of counsel must first establish that 'counsel's representation fell below an objective standard of reasonableness.' [Citation.]" (*People v. Davis* (1995) 10 Cal.4th 463, 503 (*Davis*).) " 'Tactical errors are generally not deemed reversible; and counsel's decisionmaking must be evaluated in the context of available facts. [Citation.] To the extent the record on appeal fails to disclose why counsel acted or failed to act in the manner challenged, we will affirm the judgment "unless counsel was asked for an explanation and failed to provide one, or unless there simply could be no satisfactory explanation . . . ." [Citation.]' " (*People v. Hart* (1999) 20 Cal.4th 546, 623-624 (*Hart*).)

" '[P]rejudice must [then] be affirmatively proved . . . .' " (*Hart, supra*, 20 Cal.4th at p. 624.) " 'The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.' [Citations.]" (*Davis, supra*, 10 Cal.4th at p. 503.)

B

The first omission alleged by Montes is his counsel's failure to request accomplice instructions regarding Barraza. We conclude that Montes has established neither deficient performance nor prejudice here. As discussed in part I, *ante*, the evidence presented at trial did not support an accomplice instruction regarding Barraza, so Montes's counsel had ample reason not to request one. Because such an accomplice instruction was unsupported by the evidence, and because Barraza's testimony was independently corroborated (see pt. II, *ante*), there is also no reasonable possibility that the result would have been different had Montes's counsel made such a request. (See *Davis, supra*, 10 Cal.4th at p. 503.)

The second alleged omission is Montes's counsel's failure to request a limiting instruction regarding Valera's guilty plea. Even if a request should have been made, no prejudice resulted. While evidence of a codefendant's guilty plea to a crime can carry the risk that jurors will consider such a plea as substantive evidence that another codefendant is guilty of the same crime (see, e.g., *United States v. Halbert* (9th Cir. 1981) 640 F.2d 1000, 1006), such a situation is not presented here. Valera did not plead guilty to Chee's murder. Instead, he pled guilty to being an accessory after the fact. Given the substance of Valera's testimony about Montes's role in the murder and their activities afterwards, the additional fact of Valera's guilty plea was likely inconsequential. Moreover, the jury was instructed to view Valera's testimony "with caution" if the jury found him to be an accomplice.

In light of this instruction, and considering the entire record, we find that there is no reasonable possibility that the result of Montes's trial would have been different had Montes's counsel requested the limiting instruction. (See *Davis, supra*, 10 Cal.4th at p. 503.) Montes's

14

additional argument that admission of the guilty plea violated his federal constitutional rights under the confrontation clause of the Sixth Amendment is meritless because Valera testified at trial and was cross-examined by Montes's counsel. (*People v. Williams* (2013) 56 Cal.4th 630, 668.)

The third alleged omission is Montes's counsel's failure to object to improper testimony by a sheriff's department investigator regarding another witness's truthfulness. At trial, the prosecution called Shavon Mendez, who denied telling the investigator that she had seen Montes on the night of Chee's murder, among other things. Following Mendez's testimony, the prosecution called the investigator, who testified regarding Mendez's statements to him. The prosecution then asked, "Is [Mendez] being truthful when she said she never told you that?" The investigator answered, "No, she is not."

The Attorney General acknowledges that the investigator's comment on Mendez's truthfulness was inadmissible. (*People v. Melton* (1988) 44 Cal.3d 713, 744.) However, defense counsel's failure to object is just the type of tactical decision that will rarely give rise to reversible error. (See *Hart, supra*, 20 Cal.4th at p. 623.) Counsel may reasonably have been wary of drawing further attention to the investigator's comment through her objection. Moreover, the Attorney General argues, and we agree, that any failure to object was harmless. (See *Davis, supra*, 10 Cal.4th at p. 503.) Given the investigator's testimony regarding the substance of what Mendez previously told him, the disagreement between the investigator and Mendez regarding the content of her statements was obvious. The additional effect on the jury, if any, of the investigator's further statement regarding Mendez's truthfulness was negligible. Unlike *People v. Sergill* (1982) 138 Cal.App.3d 34, on which Montes relies, the sheriff's

15

department investigator here was not offering expert testimony on the veracity of a witness. (*Id.* at pp. 38-40.) Instead, he was expressing disagreement based on his own personal knowledge of Mendez's statements. The analysis of prejudice in *Sergill* is therefore inapposite.

C

Montes further argues that the cumulative effect of these alleged errors, combined with the trial court's alleged error in omitting an accomplice instruction regarding Barraza, requires reversal. We disagree. As discussed *ante*, the trial court did not have a sua sponte obligation to give an accomplice instruction regarding Barraza, and Montes's counsel did not render ineffective assistance in failing to request one. At most, Montes's counsel could have requested a limiting instruction regarding Valera's guilty plea and objected to the sheriff's department investigator's comment regarding Mendez's truthfulness. However, even considering these potential errors together, they are harmless for the reasons set forth above. (See *People v. Price* (1991) 1 Cal.4th 324, 491 ["When we have found error, we have concluded that defendant was not prejudiced. Whether considered singly or collectively, the errors were inconsequential."].)

IV

A

After the jury's verdict, Montes moved for a new trial on the grounds of juror misconduct. Montes's motion was based primarily on a declaration from a member of Montes's trial jury, Juror No. 11. As relevant here, Juror No. 11 stated that "[s]everal times during deliberations, other jurors discussed the fact that Gerardo Montes did not take the witness stand to testify." She stated: "Jurors commented that he must be guilty because he just

16

sat there and refused to testify on his own behalf." Juror No. 11 claimed specifically that one juror, Alternate Juror No. 1, said that Montes's "refusal to testify was reason enough to find him guilty."

In opposition, the prosecution submitted declarations from the rest of Montes's jury. Alternate Juror No. 1, who joined deliberations after the departure of another juror, called Juror No. 11's declaration an "absolute lie" and denied making any statements about Montes's failure to testify. The remaining jurors stated that Montes's failure to testify was mentioned a few times in passing, but the jury foreman and other jurors reminded the jury that they should not consider this fact in their deliberations. No further discussion occurred. The remaining jurors specifically denied that Alternate Juror No. 1, or any other juror, said that Montes must be guilty because he did not testify or that his failure to testify was a reason to find him guilty.

The prosecution also submitted a declaration from an investigator, Justin Matus, who spoke to Juror No. 11. Matus stated that Juror No. 11 told him, contrary to her declaration, that other jurors did object to discussion of Montes's failure to testify and said it should not be considered. Matus asked Juror No. 11 to sign a supplemental declaration, but she never did so.

The trial court properly undertook a three-step process to consider Montes's motion for a new trial. " 'The court must first determine whether the affidavits supporting the motion are admissible under Evidence Code section 1150, subdivision (a).' [Citation.] 'If the evidence is admissible, the court must then consider whether the facts establish misconduct. [Citation.] Finally, assuming misconduct, the court must determine whether the misconduct was prejudicial. [Citations.]' [Citation.]" (*People v. Engstrom* (2011) 201 Cal.App.4th 174, 182.) After determining which portions of the jurors' declarations were admissible, the trial court

17

found that the discussion of Montes's failure to testify during deliberations raised a presumption of prejudice. (See *People v. Loker* (2008) 44 Cal.4th 691, 749 (*Loker*).) Considering the declarations and the totality of the circumstances, however, the court found that the presumption of prejudice had been rebutted and there was no substantial likelihood of juror bias. The court remarked that Juror No. 11's declaration was "somewhat nebulous and vague." In the court's view, such vagueness might itself have rebutted any prejudice. The court therefore denied Montes's motion.

In this appeal, Montes contends that the court erred by not holding an evidentiary hearing on his claims of juror misconduct and by denying his motion on the merits. Although the standards to be applied to both issues are quite different, both in the trial court and on review here, Montes's arguments on these issues are largely intertwined. The Attorney General appears to address only the question of whether the motion itself was correctly decided, rather than whether a hearing was necessary. We address the two issues separately below.

B

"[W]hen a criminal defendant moves for a new trial based on allegations of jury misconduct, the trial court has discretion to conduct an evidentiary hearing to determine the truth of the allegations." (*People v. Hedgecock* (1990) 51 Cal.3d 395, 415.) A hearing "should be held only when the defense has come forward with evidence demonstrating a strong possibility that prejudicial misconduct has occurred. Even upon such a showing, an evidentiary hearing will generally be unnecessary unless the parties' evidence presents a material conflict that can only be resolved at such a hearing." (*Id.* at p. 419.) "We review the

18

trial court's decision to deny a hearing on juror misconduct for abuse of discretion." (*People v. Polk* (2010) 190 Cal.App.4th 1183, 1202.)

Montes has not shown that the trial court abused its discretion in deciding Montes' motion without an evidentiary hearing. The prosecution and defense submitted detailed declarations from each of the jurors on Montes's trial. In the case of Juror No. 11, the court had both her initial declaration and Matus's declaration purporting to impeach it. At argument on Montes's motion, neither the prosecution nor Montes's counsel appeared to believe an evidentiary hearing was necessary. Under these circumstances, it was reasonable for the court to determine that any material evidentiary conflicts could be resolved on the basis of the declarations themselves, and thus an evidentiary hearing was unnecessary. (See *People v. Hedgecock, supra*, 51 Cal.3d at p. 419.)

C

As the trial court correctly found, the jury's discussion of Montes's decision not to testify violated the court's jury instructions and constituted misconduct. (See *Loker, supra*, 44 Cal.4th at p. 749.) Such misconduct gives rise to a presumption of prejudice. (*People v. Leonard* (2007) 40 Cal.4th 1370, 1425.) "The presumption of prejudice may be rebutted, inter alia, by a reviewing court's determination, upon examining the entire record, that there is no substantial likelihood that the complaining party suffered actual harm." (*People v. Hardy* (1992) 2 Cal.4th 86, 174.)

"On appeal from a ruling denying a new trial motion based on juror misconduct, we defer to the trial court's factual findings if supported by substantial evidence, and exercise our independent judgment on the issue of whether prejudice arose from the misconduct (i.e.,

19

whether there is a substantial likelihood of inherent and/or circumstantial juror bias)." (*People v. Cissna* (2010) 182 Cal.App.4th 1105, 1117; see also *Loker, supra*, 44 Cal.4th at p. 749.)

Here, the record does not reflect any factual findings by the trial court. Based on our independent review of the entire record, we conclude that there is no substantial likelihood that Montes suffered actual harm, i.e., juror bias, as the result of the misconduct. Any discussion of Montes's failure to testify was brief, isolated, and promptly cut off by reference to the court's jury instructions precluding such discussions. (See *Loker, supra*, 44 Cal.4th at p. 749; see also *People v. Leonard, supra*, 40 Cal.4th at p. 1425.) While the comments recounted by Juror No. 11 might raise concerns standing alone because they appear to show that the jury's discussions went beyond idle curiosity, the fact that the foreperson and other jurors immediately reminded the group that any such inferences were impermissible removes any likelihood of prejudice. (See *People v. Hord* (1993) 15 Cal.App.4th 711, 728.)

V

Montes argues, and the Attorney General agrees, that the court erroneously imposed a fee for Montes's court-appointed attorney despite stating on the record that Montes "lacks the ability to pay for costs of court-appointed counsel." The court's oral pronouncement of Montes's sentence controls subsequent written judgments and orders. (See *People v. Mitchell* (2001) 26 Cal.4th 181, 185.) We will therefore modify the judgment and the court's minute order to conform to the court's oral pronouncement.

DISPOSITION

We modify the judgment and the court's November 5, 2012 minute order to strike the fee imposed for a court-appointed attorney. As modified, the judgment is affirmed. The clerk

20

of the superior court is directed to prepare an amended abstract of judgment omitting the fee. The superior court clerk is then directed to deliver the corrected abstract of judgment to the Department of Corrections and Rehabilitation.

McINTYRE, J.

WE CONCUR:


BENKE, Acting P. J.


McDONALD, J.