Filed 10/26/23  Schrauwers v. Roy CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| JENNIFER SCHRAUWERS et al.,<br><br>        Plaintiffs and Respondents,<br><br>            v.<br><br>KEVIN THOMAS ROY,<br><br>        Defendant and Appellant. | B318395<br><br>(Los Angeles County Super. Ct. No. BC630101) |

APPEAL from a judgment of the Superior Court of Los Angeles County, H. Jay Ford III, Judge.  Affirmed.

Law Offices of Michelle T. LiVecchi-Raufi and Michelle T. LiVecchi-Raufi for Defendant and Appellant.

Traut Firm and Eric V. Traut for Plaintiffs and Respondents.

*  *  *  *  *  *

Kevin Thomas Roy (Roy) is a Hollywood director who used his skills to secretly record several videos and dozens of pictures of his wife's little sister and two of her friends in the bathroom, capturing them undressing, showering, and using the toilet. The women sued him for invasion of privacy and intentional infliction of emotional distress. Following a five-day bench trial, the trial court awarded them substantial damages. Roy challenges the sufficiency of the evidence and the damages awards. His challenges lack any merit, so we affirm.

### FACTS AND PROCEDURAL BACKGROUND

**I.    Facts[1]**

**A.    *Roy and Michelle's relationship***

Roy met Michelle Schrauwers (Michelle)[2] in 2002, when both were production assistants in Hollywood. They dated for over five years before getting engaged in 2011 and married in 2013. During that time, both moved up to work as assistant directors. They divorced in early 2015.

---

[1]    Consistent with the applicable standard of review, we set forth the facts in the light most favorable to the judgment. (*Thompson v. Asimos* (2016) 6 Cal.App.5th 970, 981 (*Thompson*).)

[2]    Because Michelle and her sister, Jennifer Schrauwers (Jennifer), are both involved in this case and share the same last name, we use their first names for clarity. We mean no disrespect.

**B.** *Roy secretly films Michelle's little sister and friends using the bathroom*

In November 2010, Roy and Michelle traveled to Las Vegas with one of Michelle's friends, Laura Twors (Twors), and Twors's husband. The two couples shared a hotel room. While there, Roy hid a camera in the hotel room's bathroom. The camera captured two dozen partially nude photographs of Twors undressing.

In January 2011, Roy and Michelle helped Michelle's friend Cintia Kumalo (Kumalo) drive to British Columbia, Canada. While staying overnight at Kumalo's parents' home, Roy hid a camera in the bathroom. The camera recorded 68 time-lapse nude photographs of Kumalo showering.

In September 2012, Roy and Michelle visited Michelle's sister Jennifer and Jennifer's husband in Kauai, Hawaii, while Jennifer and her husband were honeymooning. Roy hid a GoPro camera in the bathroom of his and Michelle's rented condo. The GoPro camera recorded a video that starts by showing Roy adjusting the camera's aim, then depicts Jennifer and her husband using the toilet, and ends with Roy returning minutes later to shut off the camera.

In April 2013, Roy and Michelle shared a hotel room with Jennifer, while all three were in Louisiana to celebrate Roy and Michelle's engagement. Roy hid a camera in the hotel room's bathroom. The camera recorded a video of Jennifer undressing and getting into and out of the shower.

The videos and photos from these four incidents were part of a larger stash of 40 videos and 400 photographs—all of women "in bathrooms, dressing rooms, and elsewhere"—that Roy kept on his portable computer hard drives.

### C. *Michelle finds Roy's stash*

In 2013, while she and Roy were only engaged, Michelle found the April 2013 video of her sister in the bathroom of the Louisiana hotel room. When she confronted Roy, he began to cry and inconsistently maintained that he had "accidentally recorded it" *and* that he did not "know why [he] did it." Roy purported to delete the video, promised "never [to] do it again," and agreed to attend a few therapy sessions; Michelle believed Roy, did not report the incident to her sister, and proceeded to marry Roy.

During their first year of marriage in 2014, Michelle noted Roy "acting odd" and suspected he was "lying to [her]." When she searched his computer, she found photographs of Jennifer changing clothes that looked like they were taken from under a bathroom door. This prompted her to search several of Roy's hard drives. Those drives contained "hundreds" of videos and photographs, including those detailed above. When Michelle confronted Roy with his stash and "begged" him to seek help, Roy became defiant, insisted there was "nothing wrong with him," demanded that she return his stash, and told her he would be seeking a divorce. Michelle did not accede to Roy's demand and instead turned the hard drives over to law enforcement.

## II. Procedural Background

In August 2016, Jennifer, Twors, and Kumalo (collectively, plaintiffs) sued Roy for (1) invasion of privacy, (2) intentional infliction of emotional distress, and (3) negligent infliction of emotional distress.[3]

In September and October 2021, the matter proceeded to a five-day bench trial. For their case in chief, plaintiffs introduced

---

[3]    The complaint also alleged three additional causes of action, but plaintiffs elected not to pursue those claims.

the relevant videos and photographs and, as witnesses, called themselves, Michelle, and a law enforcement investigator.

Roy took the stand in his defense. He admitted to recording the GoPro video in Kauai that depicted him at the beginning and end of the footage, but maintained that he did so to film himself and Michelle having sex in the bathroom; capturing Jennifer and her husband was just an unfortunate "accident." He flatly denied creating any of the other videos or photos, instead insisting that Michelle had done so to get "revenge" for his decision to get a divorce (even though those videos and photos were all created before he and Michelle were even married).

The trial court issued a tentative decision and proposed statement of decision, which became final when neither party objected. In that decision, the court found the plaintiffs' witnesses to be "credible" and, on that basis, ruled that plaintiffs had sustained their burden of proof on their claims for invasion of privacy and intentional infliction of emotional distress.[4] With regard to the invasion of privacy claim, the court found that plaintiffs had a "reasonable expectation of privacy in the bathrooms where they were photographed or filmed" and that Roy's placement of cameras in those bathrooms was "highly offensive to a reasonable person" because he captured plaintiffs "while nude and doing the most private acts a person would do in a bathroom." With regard to the emotional distress claim, the court found that Roy's filming of plaintiffs in the bathrooms was "outrageous," that Roy acted "with reckless disregard in causing

[4]    The court viewed the negligent infliction of emotional distress claim as an alternative to the intentional infliction claim; its finding of the latter obviated its need to reach the former.

5

each of the [p]laintiffs emotional distress because he gave little or no thought to the probable effects of his conduct," and that Roy's conduct caused plaintiffs "severe" "emotional distress" in the form of their feelings of betrayal and "continuing anxiety" about being filmed in the future. The court rejected Roy's testimony that one video was created by accident and the remaining videos were created by Michelle to be "not credible," "wholly unbelievable," "creatively contrived" "to generate sympathy for him," and without any corroboration whatsoever.

The court fixed the amount of damages at $350,000 for Jennifer, $250,000 for Twors, and $250,000 for Kumalo.

Roy filed this timely appeal.

## DISCUSSION

Although Roy raises a multiplicity of challenges to the trial court's ruling, they boil down to two contentions—namely, (1) the trial court's ruling is not supported by the evidence, and (2) the damages are excessive. As we explain, neither contention is well taken.[5]

## I.    Sufficiency of the Evidence

When reviewing a "judgment based upon a statement of decision following a bench trial," we review the trial court's findings of fact for substantial evidence. (*Thompson*, *supra*, 6 Cal.App.5th at p. 981.) Our task is therefore limited to asking whether the whole record, construed in the light most favorable to those findings, contains any "reasonable, credible evidence of

---

5      In his reply brief, Roy further argues that plaintiffs' appellate brief is an "unethical" "tactic to twist this case around by misrepresentation" and "another convoluted misuse of the litigation process." Roy's hyperbole is unhelpful and unnecessary; we will not address it.

6

solid value" to support them.  (*Ferguson v. Yaspan* (2014) 233 Cal.App.4th 676, 682; *People v. Brooks* (2017) 3 Cal.5th 1, 57.)

**A.    *Analysis***

1.    *Intentional infliction of emotional distress*

To prevail on a claim for intentional infliction of emotional distress, a plaintiff must establish ""'(1) [(a)] extreme and outrageous conduct by the defendant . . . causing[] emotional distress,'"" either (b)(i) ""'with the intention of causing . . . emotional distress,'"" or (b)(ii) with ""'reckless disregard of the probability of causing[] emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct.'"" (*Christensen v. Superior Court* (1991) 54 Cal.3d 868, 903 (*Christensen*); *Hughes v. Pair* (2009) 46 Cal.4th 1035, 1050 (*Hughes*); *Potter v. Firestone Tire & Rubber Co.* (1993) 6 Cal.4th 965, 1001 (*Potter*).)  As pertinent here, a defendant acts with "reckless[] disregard [of] the probability of causing[] emotional distress" if he gave "'little or no thought' to the probable consequences of his conduct."  (*KOVR-TV, Inc. v. Superior Court* (1995) 31 Cal.App.4th 1023, 1031-1032 (*KOVR-TV*), quoting *Miller v. National Broadcasting Co.* (1986) 187 Cal.App.3d 1463, 1487 (*Miller*); CACI No. 1603.)  Emotional distress is "severe or extreme" when it is ""'of such substantial quality or enduring quality that no reasonable [person] in civilized society should be expected to endure it.'"" (*Hughes*, at p. 1051; *Jackson v. Mayweather* (2017) 10 Cal.App.5th 1240, 1265.)

Substantial evidence supports the trial court's judgment for plaintiffs on the intentional infliction of emotional distress claims.  Roy's conduct was outrageous:  A bathroom "is perhaps the epitome of a private place" (*In re M.H.* (2016) 1 Cal.App.5th

699, 706 (*M.H.*)), and Roy's placement of cameras in bathrooms to record his then-girlfriend's sister and friends certainly ""'"exceed[s] all bounds of that usually tolerated in a civilized community"'"" (*Hughes, supra,* 46 Cal.4th at p. 1051).  Roy also engaged in this conduct with a reckless disregard of causing emotional distress.  Roy testified that he *knew* that being "secretly videotaped or photographed in the nude" "could be emotionally distressing" to his victims, and yet despite that knowledge gave "little or no thought" to the probable consequences of videotaping Michelle's sister and friends.[6]  Plaintiffs testified that Roy's conduct was a "betrayal of trust" from a close friend and family member that made it harder for them "to trust anybody else," and they felt that "no one can take . . . away" the "anxiety of having to live with the fact that" the photos and videos could be further disseminated.  They now check for cameras, examine the walls for "odd hole[s]," and check "vents" and "air returns" when they have to disrobe in public places like hotel rooms and bathroom stalls.  Two of the plaintiffs still worry that they could lose their jobs if the recordings come to light, two sought counseling, and the third started practicing yoga and meditation to deal with the anxiety.

    2.    *Invasion of privacy*

To prevail on a claim for invasion of privacy, a plaintiff must establish (1) intentional intrusion "into a place, conversation, or matter as to which the plaintiff has a reasonable expectation of privacy," (2) "in a manner highly offensive to a

---

[6]    Given sufficient evidence of recklessness, we need not reach the question of whether the judgment on this claim could be upheld on the alternative ground that Roy *intended* his actions to cause emotional distress.

8

reasonable person." (*Hernandez v. Hillsides, Inc.* (2009) 47 Cal.4th 272, 286; *Shulman v. Group W Productions, Inc.* (1998) 18 Cal.4th 200, 231; accord, Cal. Const., art. I, § 1 [inalienable rights include "pursuing and obtaining . . . privacy"].) To satisfy the first element, the plaintiff must show that the defendant "penetrated some zone of physical or sensory privacy" where the plaintiff "had an objectively reasonable expectation of seclusion or solitude." (*Shulman*, at p. 232; *Belen v. Ryan Seacrest Productions, LLC* (2021) 65 Cal.App.5th 1145, 1163.) Damages for an invasion of privacy include compensation for the plaintiff's "mental suffering and anguish." (*Miller*, *supra*, 187 Cal.App.3d at p. 1484.)

Substantial evidence supports the trial court's judgment for plaintiffs on the invasion of privacy claims. As noted above, a bathroom is "the epitome of a private place." (*M.H.*, *supra*, 1 Cal.App.5th at pp. 706, 711 ["privacy intrusions" include "the indignity and embarrassment of being electronically recorded" in the bathroom]; *People v. Triggs* (1973) 8 Cal.3d 884, 891, disapproved on other grounds by *People v. Lilienthal* (1978) 22 Cal.3d 891, 896, fn. 4 ["[t]he expectation of privacy a person has when he enters a restroom is reasonable"]; *Britt v. Superior Court of Santa Clara County* (1962) 58 Cal.2d 469, 472 ["constitutionally protected right of personal privacy" extends to public bathrooms].) What is more, reasonable people would find a hidden camera recording their private bathroom activities to be highly offensive.

### B. *Roy's arguments*

Roy offers a plethora of arguments challenging the trial court's rulings. None of them has any merit.

9

1.      *Arguments applicable to both the invasion of privacy and intentional infliction of emotional distress claims*

Roy launches two groups of challenges at both claims.

First and foremost, Roy asserts that the trial court's findings that plaintiffs were credible witnesses and he was not—findings that underlie its ruling on both of plaintiffs' claims—are "rash, presumptuous, [and] speculative" and "based . . . on an isolated bit of evidence" rather than the "whole record."  More specifically, he makes three subsidiary assertions—namely, that (1) the court "arbitrarily disregarded" Roy's explanation that he "accidentally" turned on the GoPro camera when he recorded Jennifer and her husband in Kauai, and on appeal asks us to reopen the record to consider his testimony in light of online reports of how easy it is to accidentally turn on a GoPro camera; (2) the court erred in not treating Michelle as "akin" to an "accomplice as a matter of law," such that her testimony cannot be credited unless it was corroborated; and (3) the court misused Evidence Code section 1101 in rejecting his testimony as not credible because the court impermissibly used his accidental placement of the camera in the Kauai condo bathroom as evidence that he intentionally placed cameras in the other bathrooms.  These arguments border on the frivolous.

As a general matter, the assessment of witness credibility lies within the """"exclusive province"""" of the trier of fact (*People v. Beck and Cruz* (2019) 8 Cal.5th 548, 627), and we may overturn a credibility finding only if the credited testimony was """"physically impossible or inherently improbable"""" (*People v. Prunty* (2015) 62 Cal.4th 59, 89 (conc. & dis. opn. of Cantil-Sakauye, C. J.)).  Applying this test, we have no basis to disregard the trial court's credibility finding regarding Michelle

because her testimony was neither physically impossible nor inherently improbable. We also have no basis to disregard the trial court's "no credibility" finding as to Roy because his testimony *was* inherently improbable—he testified that Michelle's purpose in recording plaintiffs in the bathrooms between 2010 and 2013 was to seek revenge for Roy's decision to divorce her *in 2014*; but unless Michelle had access to a time-traveling DeLorean (which, as far as we know, is "physically impossible"), this argument makes absolutely no sense.

Roy's subsidiary arguments do not alter our analysis.

We decline to impeach the trial court's credibility findings on the basis of evidence that Roy elected not to present to that court and to present to us for the first time. (Code Civ. Proc., § 909; *City of Claremont v. Kruse* (2009) 177 Cal.App.4th 1153, 1167 [noting reluctance to allow 13th hour attacks on the evidence]; *People v. Gonsalves* (2021) 66 Cal.App.5th 1, 12.)

We also decline Roy's invitation to apply the accomplice doctrine. It is a creature of the criminal law (Pen. Code, § 1111 [convictions cannot be based "upon the testimony of an accomplice," or "one who is liable to prosecution for the identical offense charged against the defendant," without corroboration]); importing this doctrine into the civil arena would enable any civil party to accuse his opponent of the conduct at issue, thereby requiring corroboration and thus effectively eviscerating the usual rule that the testimony of a single witness will suffice in civil cases. (Accord, Evid. Code, § 411 [except when otherwise required by statute, evidence of one witness is sufficient to prove a fact]; *Vollaro v. Lispi* (2014) 224 Cal.App.4th 93, 102 [same]; *Mazik v. Geico General Ins. Co.* (2019) 35 Cal.App.5th 455, 463, fn. 2 [testimony of one witness can be sufficient to support

verdict].) What is more, this doctrine would not help Roy in this case. Corroboration is an absolute requirement only if a person is an accomplice "as a matter of law," but a witness meets that standard only """"when the facts regarding the witness's criminal culpability are "clear and undisputed"""""" and thus """"permits only [the] single inference"""""" that the witness is an accomplice. (*People v. Clark* (2016) 63 Cal.4th 522, 606, quoting *People v. Riggs* (2008) 44 Cal.4th 248, 312.) Where, as here, there is contrary testimony about whether the witness completed the crime, it is up to the trier of fact to decide whether the person is an accomplice (and hence whether corroboration is required). (*People v. Bryant, Smith and Wheeler* (2014) 60 Cal.4th 335, 432; *People v. Sternberg* (1896) 111 Cal. 3, 9; *People v. Boyce* (1980) 110 Cal.App.3d 726, 736.) Here, the trial court determined that Michelle was *not* an accomplice, such that no corroboration would have been required *even if* we accept Roy's argument—and this is true as to the substantive offense as well as to authentication of the videos and photos.

And we decline to give any weight to his argument based on Evidence Code section 1101. That provision erects a general prohibition against using one instance of a person's conduct to prove that person's propensity to engage in such conduct and thus prove he "did it again." (Evid. Code, § 1101, subd. (a); *People v. Daveggio and Michaud* (2018) 4 Cal.5th 790, 822-823.) But it also has an express exception that allows a prior instance to be used to prove that person's intent and absence of mistake or accident. (Evid. Code, § 1101, subd. (b).) Here, the trial court rejected as not credible Roy's testimony that he "accidentally" turned on the camera in the Kauai condo bathroom, found that Roy's taping on that occasion was intentional and not accidental,

12

and then used that instance to prove that the *other recordings* were also intentional and not accidental.  This is entirely proper.

Second, Roy argues that there is insufficient evidence that plaintiffs suffered mental anguish (to support the invasion of privacy claim) or severe emotional distress (to support the intentional infliction of emotional distress claim).  Specifically, he argues that any anguish or distress they suffered is (1) too speculative to be compensable because Roy did not ever intend to disseminate his videos and photographs, (2) not related to anything *he* did because one of the plaintiffs had pre-existing anxiety, and (3) of insufficient severity because one of the plaintiffs did not immediately seek therapy after learning of his conduct.  We are unpersuaded.  What causes plaintiffs anguish and distress is the *very existence* of the videos and photos, plaintiffs' feelings of being betrayed and violated, and their inability to control how and when their nude images may be circulated; their anguish and distress *exists now*, and is separate from the additional anguish and distress that might be occasioned should the videos and photos be disseminated more widely.  A tortfeasor takes his victim as he finds her; the existence of any pre-existing trauma or distress is therefore irrelevant.  (See *Golden v. Dungan* (1971) 20 Cal.App.3d 295, 311 [tortfeasor "must take his victim as he finds [her]"]; *People v. Taylor* (2011) 197 Cal.App.4th 757, 764 [same].)  And Roy's complaints that plaintiffs did not seek treatment for the anguish and distress he inflicted in the manner in which he thinks is appropriate is nothing more than a request that we reweigh the evidence; that is an invitation we must decline.  (*Baral v. Schnitt* (2016) 1 Cal.5th 376, 384.)

13

2. *Arguments applicable only to the intentional infliction of emotional distress*

With respect solely to the intentional infliction of emotional distress claim, Roy argues there was insufficient evidence that he acted in reckless disregard of the probability that his conduct might cause plaintiffs emotional distress by giving little or no thought to the probable consequences of that conduct. (*Hughes*, *supra*, 46 Cal.4th at p. 1050; *KOVR-TV*, *supra*, 31 Cal.App.4th at pp. 1031-1032.) Specifically, Roy argues that there was insufficient evidence that he acted recklessly because (1) he created the videos and photos of plaintiffs in the bathroom as part of a secret stash of self-produced pornography that was never meant to see the light of day, such that dissemination—and any resulting harm—would not be "probable"; and (2) his conduct in creating his private stash had the "self-directed purpose of secretly satisfying [his] own prurient interests," such that it was not directed at anyone but himself.

These arguments lack merit.

To begin, even if Roy did not *intend* the videos and photos he created to become public, he testified that he *knew* that his very act of bringing the videos and photos into existence by "secretly videotap[ing] or photograph[ing]" plaintiffs "in the nude" "could be emotionally distressing," and gave that consequence little or no thought since he did it anyway. Further, we can reasonably infer that Roy knew that computers can be hacked and that photos and videos intended to be private can sometimes be disseminated: Roy admitted that he did nothing to safeguard the recordings; although he blamed it on Michelle, he never used any passwords or other protection on his computer, and he was aware that "anybody coming through the house could

14

have access[ed]" the hard drives.  Indeed, the very fact Michelle was able to access the videos and photos shows that their dissemination was not just a possibility, but a probable eventuality.

Next, Roy is correct that a defendant may be held liable for intentional infliction of emotional distress only if he engages in "'conduct *directed at the plaintiff*, or [that] occur[s] in the presence of a plaintiff *of whom the defendant is aware*.'" (*Potter*, *supra*, 6 Cal.4th at p. 1002.)  This rule was fashioned to account for situations in which a defendant's conduct has an effect on an unanticipated third party, such as when a mortuary's reckless treatment of remains of the deceased causes emotional distress to the deceased's surviving family.  (E.g., *Christensen*, *supra*, 54 Cal.3d at pp. 903-906.)  But Roy is incorrect, however, that the rule applies here.  We reject his self-serving proclamation that his conduct in creating a secret stash of pornography was directed at himself.  That may have been his *motive*, but his *conduct* was most assuredly directed at plaintiffs whom he videotaped and photographed in the bathroom.

## II.    Excessive Damages[7]

Whether a damages award is "excessive" turns on whether substantial evidence supports the amount that was awarded.  As noted above, our substantial evidence review is limited:  We ask only whether the amount awarded is supported by the record

---

[7]    Plaintiffs urge that Roy has forfeited his right to challenge the excessiveness of damages by not raising it a motion for new trial.  Roy responds that his challenge is cognizable because it is based more on questions of law than disputed factual issues.  We will sidestep this debate, as our analysis of the merits shows Roy's challenge to be without merit.

15

viewed in the light most supportive of that award. (*Garcia v. Myllyla* (2019) 40 Cal.App.5th 990, 999-1000; *Major v. Western Home Ins. Co.* (2009) 169 Cal.App.4th 1197, 1208.) Indeed, our review of emotional distress damages is even more deferential because, by definition, "there is no fixed or absolute standard by which to compute the monetary value" of this "extremely subjective and individualistic" form of damages. (*Merlo v. Standard Life & Accident Ins. Co.* (1976) 59 Cal.App.3d 5, 17; *Regan Roofing Co. v. Superior Court* (1994) 21 Cal.App.4th 1685, 1707-1708.)

Substantial evidence supports the trial court's award of $350,000 for Jennifer and $250,000 in damages for each of Michelle's friends. Each plaintiff testified that she felt extreme "betrayal of trust" and felt "violated" upon learning that Roy, a close friend or family member, had secretly recorded her most private moments. Each plaintiff testified that this knowledge has forever changed how she interacts with the world—she is "on edge" in public bathrooms and changing rooms and continues to check "odd hole[s]," "vents," and "air returns" in public places for cameras. And each plaintiff testified that, because digital images are nearly impossible to un-make once made, her anxiety about future dissemination of those images can never be "take[n] . . . away." Two of the plaintiffs further indicated that they are afraid that dissemination of those images would impact their careers.

Roy marshals two arguments in response.

First, he argues that the damages amounts are excessive because plaintiffs' counsel "inflamed the court" by (1) "improperly" discussing a now-expunged misdemeanor conviction Roy suffered for possessing some of the videos and photos found

16

on his hard drives; and (2) invoking a theme, in closing argument, that "justice" and "fair[ness]" warrant holding Roy responsible for his conduct.  These arguments lack merit.  Although Roy and plaintiffs litigated whether Roy's conviction was admissible, the trial court ultimately ruled that it was not and reported that it was not considering it.[8]  Contrary to what Roy asserts on appeal, neither plaintiffs' attorneys nor their witnesses violated the court's ruling by thereafter discussing the conviction:  Twors testified only that she tried to find out whether she would be "included" in a California criminal case (but made no mention of the outcome of that case), and that she filed an unsuccessful criminal complaint in Las Vegas; Kumalo testified that she attempted unsuccessfully to file a criminal complaint in Canada; and Jennifer testified that she tried unsuccessfully to pursue criminal charges in Hawaii and Louisiana.  And plaintiffs' thematic closing argument does not call into question the trial court's ruling on admissibility or its impartiality.

Second, Roy argues that the damages award was excessive because it was "so grossly disproportionate" to plaintiffs' injuries that it "'shocks the conscience and suggests passion, prejudice or corruption'" on the part of the trial court.  In particular, Roy argues that the awarded amounts are too high because one plaintiff did not seek formal therapy, another did not present sufficient evidence that she actually spoke to or paid her

---

8       Roy accuses plaintiffs of mentioning the conviction in their complaint and trial brief to "blast the court with every shred of inadmissible and prejudicial evidence that [they] so wanted," but these documents were filed *before* the trial court issued its ruling excluding the conviction and thus could not have themselves violated that ruling.

17

therapist, and the third waited too long before seeking therapy. These facts do not call into question the reasonableness of the awards.  Awards of $250,000 and $350,000 do not shock the conscience when assessed against the trauma of being secretly recorded by a trusted friend and family member while engaging in the most private activities in a bathroom, the very "epitome of a private place." (*M.H.*, *supra*, 1 Cal.App.5th at p. 706.)

## DISPOSITION

The judgment is affirmed.  Plaintiffs are entitled to their costs on appeal.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, J.
HOFFSTADT

We concur:


_____, Acting P. J.
ASHMANN-GERST


_____, J.*
KWAN

---

\*       Judge of the Superior Court of Los Angeles County, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.